# CHARLESTON.

PAULINE M. CONLEY, *Admx., etc. v.* STATE COMPENSATION COMMISSIONER

(No. 6511)

Submitted September 4, 1929.   Decided September 10, 1929.

*Rollo J. Conley* and *Joseph G. Conley,* for appellant.

*Howard B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for the State.

HATCHER, JUDGE:

This appeal involves the claim of H. R. Scranage for workmen's compensation. It is based on an alleged injury to his heart from the inhalation of carbon monoxide gas while in the course of his employment by the Maryland Coal Company. The company is a subscriber to the Workmen's Compensation fund. The claim was denied by the Compensation Commissioner, and an appeal taken to the Workmen's Compensation Appeal Board. Mr. Scrange died while his appeal was pending there. The Legislature abolished that board before it acted on the claim. Pauline M. Conley was appointed administratrix of his estate as well as guardian of his only child, and she prosecutes the appeal in this Court.

The Commissioner moves to dismiss the appeal because application therefor was not made to this Court within ninety days after notice of the final action of the Commissioner as provided by section 43, Chapter 15P, Code. The appeal to the Appeal Board was taken within the ninety days. While that Board was without jurisdiction to hear the cause (see Acts, 1925, Chapter 68, Section 57), the appeal thereto shows that the claimant had not abandoned his demand but was prosecuting it as best he knew how. We have held that the Workmen's Compensation Act should be construed liberally and not strictly. *Caldwell* v. *Compensation Commissioner,* 106 W. Va. 14, 18. We are, therefore, of opinion that the claimant should not lose his right of appeal here when in good faith he secured a timely appeal before the wrong tribunal.

The Commissioner further contends that under Acts 1925, Chapter 68, section 31, the petitioner here has no right as

administratrix to the fund claimed. That may be true, but she does have such right as guardian, which appointment she also holds.

Mr. Scrange was soldering spouting with a gasoline soldering torch. He testified that on the first day he used the torch he experienced nervousness and headache, and on the second day he suffered so severely that he had to stop work. He was treated at the time by Dr. C. M. Ramage, of Fairmont, who testified that Mr. Scranage was suffering from carbon monoxide poisoning; that he had "dilitation of the heart, poor action of the valves and weak and rapid beat of the heart"; and that the injury was permanent. The doctor was of opinion that the injury was due to the carbon monoxide poisoning.

After the claim was filed, Mr. Scranage was examined by Dr. B. M. Chenoweth of Wendel, who is the physician for the Maryland Coal Company, and by Dr. D. C. Peck of Grafton. These physicians deposed that they found Mr. Scranage suffering from a mitral stenosis which is "an infection of the mitral valve of the heart". They attributed his condition to an attack of inflamatory rheumatism which he had when about eight years old, and were of opinion that such heart conditions as his were due to infections in the blood, and that carbon monoxide poisoning had nothing to do with them. Dr. Chenoweth acknowledged that he knew little of the effects of gas poisoning on the human body. Dr. Peck admitted that he was "entirely unfamiliar with carbon monoxide poisoning", and that he had never treated any case of gas poisoning and "could not offer any expert opinion on that."

Russell Kessel, M.D., who is a member of the medical department of the Commissioner, considered the evidence in this case and advised the Commissioner as follows: "From our knowledge of monoxide poisoning, claimant may have a weakened heart as a result of same. However, due to the fact that claimant was working in a room which was not well inclosed, it is not our belief that he could have gotten enough carbon monoxide poisoning to cause affection of the heart. It is likewise our belief which is based on expert dependant judgment, that mitral stenosis is not a resulting factor from carbon monoxide poisoning."

Mr. Scrange was in no sense a malingerer. He was 46 years old and while never a robust man, had worked steadily prior to his alleged injury with no apparent symptoms of organic heart trouble. After the injury this trouble was manifest. The evidence clearly proves that he was poisoned by carbon monoxide gas. Is the relation of the poisoning to the stenosis causative or coincident? If causative, or if the stenosis was materially aggravated thereby, Scranage was entitled to compensation. In view of the testimony of Dr. Ramage we are of opinion that this claim should not be denied in the absence of convincing evidence to the contrary. It is true that Dr. Kessel believes that mitral stenosis does not result from such poisoning. But he bases that belief on ''expert dependant judgment.'' We have no definite idea what he means by that phrase. If he refers to the opinions of members of his profession who are competent to advise expertly on this matter, his belief is of course well founded. But if he refers to the judgment of Doctors Chenoweth and Peck on the effects of gas poisoning, his opinion is not determinative, as their own admissions disqualify them as experts thereon. It is therefore not clear whether competent evidence supports the finding of the Commissioner. It seems to us that the writings of standard medical authorities should definitely establish whether mitral stenosis may be a sequela to such poisoning. Counsel for the petitioner refers to Dr. Henderson of Scotland and Mr. Stressman of Germany as the leading authorities on this subject, and states that both support the opinion of Dr. Ramage. We cannot lightly disregard this statement. We therefore recommit this case to the Commissioner with the recommendation that he have the medical department examine the works of Dr. Henderson and Dr. Stressman as well as other authorities on the effect of carbon monoxide poisoning on the heart, and then advise him accordingly.

*Reversed.*