WILLIAM DAVIS *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 6763)

Submitted January 20, 1931. Decided January 27, 1931.

*C. R. Harless,* for appellant.

*Howard B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for respondents.

LIVELY, JUDGE:

This is an appeal from a ruling of the State Compensation Commissioner which denied petitioner additional compensation on the ground that occupational diseases are not compensable under the workmen's compensation law.

Claimant, twenty-one years of age, had been an employee of the Beckley Machine & Electric Company for three years. On September 5, 1928, he returned to his employment about eight o'clock in the evening, after the plant had been closed for the day, to take some cores out of the oven. He remained in the shop for fifteen or twenty minutes, then returned to his

car, turned on the ignition and fell over. An examination at the hospital revealed a complete sensory and facial paralysis of the right side of claimant's body. Compensation at the rate of $8.00 per week was awarded on December 4, 1928, and claimant was paid at that rate for about 22 weeks, or until February 16, 1929. On March 2, 1929, the commissioner wrote to claimant's father that there was no evidence that claimant would have any permanent disability, but invited a report on that question from claimant's physician. Dr. W. L. McCray advised the commissioner that, commencing with February 26th, claimant had worked for seven days but had to quit because of the weakness of his elbow and had to discontinue treatments because of his finances. The medical examiner for the compensation department advised the commissioner that claimant's injury had been diagnosed by his physician as lead poisoning; and on May 13, 1929, the commissioner advised claimant that he had been sufficiently compensated and that "the trouble of which you complain is not due to an injury received in the course of and resulting from your employment." No protest was made to this finding. On June 10, 1929, the commissioner, in response to a letter written on June 2, 1929, advised claimant's father that the case had been closed. On August 12, 1929, claimant's attorney asked for permission to reopen the claim and to submit further evidence. The commissioner invited the submission of further evidence which would controvert the facts on which he had based his conclusion. On December 14, 1929, answering a letter written ten days prior thereto, the commissioner advised counsel that if claimant "were injured, it was lead poisoning, and he couldn't tell when he was injured;" and refused to reopen the case. On December 23, 1929, counsel advised the compensation department that depositions would be taken to substantiate Davis' claim and asked that the department have its representative present. This was refused; depositions were taken and submitted to the commissioner who, after considering them, refused to reopen the case. Claimant obtained an appeal March 22, 1930.

Section 43, chapter 71, Acts of 1929, regulates the procedure of appeals to this Court in cases wherein the commissioner's

ruling goes to the basis of claimant's right to compensation. This statute, effective from passage on March 7, 1929, requires claimant to object to a finding going to the basis of his claim within ten days after receipt of the notice. This procedure is prerequisite to appellate proceedings, even though the alleged injury occurred prior to the enactment of the statute. *Proffitt* v. *Compensation Commissioner*, 108 W. Va. 438, 443. While the award to claimant of $8.00 a week was not for any definite time and although the reason for the commissioner's stopping compensation in February is not clear from the record, the jurisdiction of the commissioner over a case is continuing and his refusal on May 13, 1929, to award claimant further compensation was within his authority. There is nothing in the record to show that the case was reopened after the first refusal. The statute applicable in this case was new, and it is very probable that claimant was unaware of its existence. (Counsel first appeared in the case in August.) We are, however, bound by the statute, regardless of our attitude on the question presented on the merits of the case. *Enyart* v. *Comp. Com'r.*, 109 W. Va. 613; *State ex rel. Meeks* v. *Comp. Com'r.*, 108 W. Va. 68; *Proffitt* v. *Comp. Com'r., supra.*

The question of whether an occupational disease is compensable under our workmen's compensation act has never been judicially determined in this state; and because of claimant's failure to proceed properly, we cannot now decide it. Any comment relating thereto is merely by way of *obiter dictum.* We feel, however, that certain observations resulting from a study—though not an exhaustive one—of the law applicable thereto may be of some aid to members of the bar and to those charged with the administration of the compensation fund.

In England, the Act of 1897 provided for compensation in case of "personal injury by accident" arising out of and in the course of employment, and occupation poisoning was not considered an "accident" within the meaning of the act. *Williams* v. *Duncan* (1898; C. C.) 1 W. C. C. C. (Eng.) 123. Under the English Acts of 1906 and 1925, respectively, benefits were extended to certain industrial diseases as if the dis-

eases were a "personal injury by accident," and lead poisoning has been named as one of the diseases compensable under these acts. Elliott's Workmen's Comp. Acts, 9th Ed., 519; Ency. of Laws of England, Vol. 5, 277. In the United States, several states have followed the course of England. In Minnesota, New Jersey, New York, and Ohio, by statutory enactment, specified occupational diseases under certain conditions are compensable. The California statute provided that the term "injury" included any diseases arising out of the employment. California General Laws (1923) Act 4749, sec. 3 (4). Likewise, in Wisconsin, the statute includes occupational injuries. Statutes, 1923, sec. 102.35. By special enactment, poisoning by lead in certain occupations is deemed accidental in Illinois. Occupational Disease, Act, sec. 15. But, where an award of compensation has been dependent upon judicial interpretation of statutory language, a majority of the courts have excluded occupational diseases from the purview of the respective statutes. See Jones' Digest of Workmen's Compensation Laws (1929); also 29 A. L. R. 691; 44 A. L. R. 471. Naturally, of course, the language of the statute has determined its interpretation; and the contrariety of judicial opinion has been, in the main, due to the differences in the language employed in the various statutes. It has been generally held, where the word "accident" is used, that those contracting occupational diseases have no claim for compensation.

The Massachusetts statute provides for compensation if the employee receive a "personal injury arising out of and in the course of employment." The term "by accident" is omitted as it is in our act. Section 25, chapter 15P, Barnes' Code, provides for compensation "for personal injuries" received in this state "in the course of and resulting from their employment." Likewise, the Michigan statute, in force in 1914, provided that the employee be given compensation for a "personal injury arising out of and in the course of his employment." It is interesting at this point to note that under these statutes, Massachusetts has held (*Hurle's Case*, 217 Mass. 223) that its statute included occupational diseases, whereas the Michigan court denied compensation therefor.

*Adams* v. *Acme White Lead & C. Works,* 182 Mich. 157, 148 N. W. 485, L. R. A. 1916A, 283. The Massachusetts court had no difficulty in arriving at its conclusion. The court found that it was not bound by English decisions because the term "by accident" had been omitted from the statute of that forum. In *Johnson's Case,* 217 Mass. 388, decided shortly after *Hurle's Case,* the court permitted an award to an employee totally incapacitated from labor because of his physical condition due to the results of lead poisoning, stating: "Aside from the decisions under the English act which provides for compensation for 'personal injuries by accident,' it is clear that 'personal injury' under our act includes any injury or disease which arises out of and in the course of the employment, which causes incapacity for work and thereby impairs the ability of the employer for earning wages." (Compare Pimental's Case, 127 N. E. (Mass.) 424).

In addition to the provision quoted above, the Michigan statute, in describing the employers subject to the statute, provided that "every person, firm and private corporation, including any public service corporation, who has any person in service under any contract of hire * * * and who, at or prior to the time of the *accident shall,*" etc. The title of the Act stated that compensation was for *accidental injury.* Hence, it was a consideration of these various sections which occasioned the result of the *Adams' Case.* The Federal Compensation Act relating to government employees did not contain the word "accident" but granted compensation if the employee "is injured in the course of such employment." As in the Michigan Act, subsidiary clauses referred to "accidents" and "accidental injuries." The early opinions included compensation for occupational diseases, but later determinations abandoned the original holdings and awarded compensation. Readbury's Workmen's Comp., (3rd Ed.) 317-321.

Counsel for claimant in the instant case argues that West Virginia should follow the Massachusetts rule, but, the statutes are not parallel because of section 26 of our compensation act which provides that all employers having elected to pay into the fund, or having elected, shall be in

default in payment, shall be liable to their employees for damages suffered by reason of *"accidental personal injuries"* sustained in the course of employment by the wrongful act, neglect or default of the employer; and in any action by the employee the common law defenses of the fellow-servant rule, assumption of risk, or contributory negligence shall not be available to the employer. It is suggested that, since at common law, an employer was not liable for occupational diseases, to include them in the term "accidental personal injuries" would result in increasing the employer's common law liability, for in a suit to recover damages the defense of assumption of risk could not be made, not only in those injuries for which the employer was liable at common law but occupational diseases as well. This court has already held in *DeFrancesco* v. *Mining Company*, 76 W. Va. 756, 761, that "It is not the purpose of the statute to prescribe acts on the part of the master which, by the common law, were rightful and free from negligence, but only to eliminate an application of the principle of waiver—assumption of risk of injury by known acts of negligence on the part of the master."

In *Specialty Company* v. *Francks*, 147 Md. 368, 128 Atl. 635, the Maryland Court, however, reaches a conclusion which opposes the Michigan view. In that case, Catherine Francks was employed by the Specialty Company, a manufacturer of fireworks, and she worked in its "spit devil department" where, during the years 1921-1923, she gradually contracted a disease known as phosphorus poisoning through the inhalation of dangerous and noxious fumes and gases. She brought suit and obtained judgment against the employer in the lower court, but the appellate court reversed the judgment without prejudice to plaintiff to secure compensation under the workmen's compensation fund. The workmen's compensation act of Maryland (Laws 1916, Ch. 597, sec. 14) provided that "every employer subject to the provisions of this act, shall pay or provide as required herein compensation according to the schedules of this act for the disability or death of his employees resulting from an *accidental personal injury*," etc. The court stated: "The fact that she continued at her place of labor, in the doing of her common and

regular task, makes it clear that the phosphorus poisoning happened without her design or exceptation, and so her injury was accidental.'' In another portion of the opinion the court undertakes to differentiate between injury ''by accident'' and ''accidental injury.'' It states the differences thus:

> ''As the substantive carries the idea of something happening unexpectedly at a time and place, the term 'accident' or 'injury by accident' has been consistently construed by the courts to embrace two different notions. The first is that of unexpectedness, and the second that of an injury sustained on some definite occasion, whose date can be fixed with reasonable certainty. The adjective 'accidental' is not a technical term but a common one, whose popular usage would not necessarily mean that the words 'accidental injuries' indicated the existence of an accident, but rather the idea that the injury was either unintended or unexpected. * * * In the term 'accidental injuries,' the substantive 'injuries' expresses the notion of the thing or event, i. e., the wrong or damage done to the person; while 'accidental' qualifies and describes the noun by ascribing to 'injuries' a quality or condition of happening or coming by chance or without design, taking place unexpectedly or unintentionally.''

Such is the reasoning of the Maryland court.

It can thus be seen that some doubt may be raised as to the intendment of the legislators in 1913 when our original workmen's compensation act was created. We venture no decision on that matter. It might be well, however, that the legislature, by proper enactment, state our policy with reference to payment of compensation for occupational diseases.

*Appeal dismissed.*