DORA JONES, *Adm'rix., etc. v.* RINEHART & DENNIS CO., INC., *et al.*

(CC. 470)

Submitted January 25, 1933. Decided February 14, 1933.

(Rehearing denied March 29, 1933)

*Hubard & Bacon,* for plaintiff.

*Brown, Jackson & Knight,* and *W. L. Lee* and *Dillon, Mahan & Holt,* for defendants.

MAXWELL, PRESIDENT:

This case involves the sufficiency of a declaration for damages for alleged wrongful death. The circuit court overruled a demurrer to the declaration and each count and certified its ruling here.

It is alleged that plaintiff's decedent was a laborer in the employ of defendant, Rinehart & Dennis Company, Inc., contractor in charge of the construction for The New Kanawha Power Company of "an underground tunnel about thirty-two feet in diameter and about four miles in length, beginning at a point on the North side of New River near the village of Hawks Nest and extending under the mountain to a point on the same side of said river near Gauley Junction in Fayette County, West Virginia." It is further alleged that defendant, Perkins, was the vice-president and general manager of the Rinehart & Dennis Company, and "was in active charge, management, supervision, direction and control of the construction of said tunnel for the said defendant company * * *."

The declaration contains six counts alleging, respectively (1) failure of defendants to provide decedent with a safe

place in which to work, (2) failure to employ experienced foremen, (3) failure to adopt and promulgate proper rules, (4) failure to warn and instruct decedent as to the dangers attendant upon his employment, (5) failure to furnish proper tools and equipment, (6) failure to provide for proper circulation of air. Each count alleges not only negligence on the part of the defendants, but also that they acted willfully, wantonly, and with deliberate intention to injure the plaintiff's decedent. In our opinion this latter allegation has no bearing on the questions before us. The portion of the statute sought to be invoked is applicable to different situations. The pertinent part of the statute, self-explanatory, reads: ''If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer as if this chapter had not been enacted for any excess of damages over the amount received or receivable under this chapter.'' Code 1931, 23-4-2.

The burden of the complaint, permeating each count, is that through negligence of defendants in causing and permitting large quantities of silica dust to pervade and saturate the atmosphere in said tunnel the plaintiff's decedent contracted the disease known as silicosis of which he died. It is alleged that much of the stone removed from the tunnel was more than ninety-nine per centum silica; that compressed air drills were used for the drilling of holes in said stone for the purpose of inserting explosives to dislodge the same; that large quantities of dust arose from this operation; that water was not used in the drill holes to keep down the dust, nor was any other means employed by the defendants to protect plaintiff's decedent from the deleterious effects of the dust.

It is not alleged in the declaration that the corporate defendant is not a subscriber to the state compensation fund, or, being a subscriber, is in default of the payment of premiums to which it was subject under the act and regulations of the commissioner, or that, for some other reason, it is deprived of the protection of the act. This failure of allegation

is the basis of the demurrer. Demurrants rely upon holdings of this Court that in actions for damages for personal injury against defendants eligible to the protection of the workmen's compensation act, there must be averment of the failure of such employer to become a subscriber, or, having subscribed to the fund, is in default. *McVey* v. *C. & P. Tel. Co.*, 103 W. Va. 519, 138 S. E. 97; *Gunnoe* v. *Glogora Coal Co.*, 93 W. Va. 636, 117 S. E. 484.

Plaintiff seeks to justify the absence of such allegation from the declaration by taking the position that this case is without the terms of the workmen's compensation act and therefore is not controlled by the requirements thereof. The plaintiff's position is based on four propositions: (1) an employee has right of action at common law for damages for disease caused by negligence of his employer; (2) under our counterpart of Lord Campbell's Act, if such employee die of a disease so contracted, his personal representative may maintain action for the wrongful death; (3) disease, whether occupational (no specific negligence of employer involved) or whether non-occupational but attributable to negligence of employer, is not compensable, under the West Virginia Compensation Act; (4) the compensation act exonerates employers from common law liability only in compensable matters.

The defendants neither affirm nor deny that occupational disease is compensable under our statute. They assert that that question is not involved in the problem before the Court. Their primal and basic proposition is that the compensation act relieves subscribing employers, not in default, from liability to respond in damages for injury or death of an employee, however occurring, regardless of whether there be involved a compensable or a non-compensable injury. This position is sought to be grounded on the following section of the workmen's compensation act:

> "Any employer subject to this chapter who shall elect to pay into the workmen's compensation fund the premiums provided by this chapter shall not be liable to respond in damages at common law or by statute for the injury or death of any employee however occurring, after such election and during any period in which such employer shall not be in default in the payment of such premiums and shall have

complied fully with all other provisions of this chapter: *Provided,* That the injured employee has remained in his service with notice that his employer has elected to pay into the workmen's compensation fund the premiums provided by this chapter. The continuation in the service of such employer with such notice shall be deemed a waiver by the employee and by the parents of any minor employee of the right of action as aforesaid, which the employee or his or her parents would otherwise have." Code 1931, 23-2-6. Code 1932, sec. 2516.

The section of our compensation statute which defines compensable matters reads:

"The commissioner shall disburse the workmen's compensation fund to the employees of such employers as are not delinquent in the payment of premiums for the month in which the injury occurs, and who have otherwise complied fully with the provisions of this chapter, and which employees shall have received personal injuries in this State in the course of and resulting from their employment, or to the dependents, if any, of such employees in case death has ensued, according to the provisions hereinafter made; and also for the expenses of the administration of this chapter, as provided in section two, article one of this chapter." Code 1931, 23-4-1. Code 1932, sec. 2526.

With reference to these sections of the statute defendants urge that the precise question before the Court is whether plaintiff's decedent's injury is actionable in the light of the provisions of section 2516, and not whether it is compensable under section 2526.

True, in the last analysis, the question of whether plaintiff's declaration presents a cause of action must be determined specifically in the light of section 2516, but in answering that question the Court, acting under familiar rules of statutory construction, must look to the whole act, and, we think, must look specially to section 2526, because of the peculiar and necessary correlation between that section and section 2516. Correlation exists because both sections must be examined in determining the rights of an injured employee. The language of section 2516 providing that an employer subject to the compensation act, not in default, "shall not be liable to re-

spond in damages at common law or by statute for injury or death of any employee however occurring'', if considered isolated from the remainder of said section and from all the rest of the act would sustain the contention of the defendants that an action for damages by an employee against an employer for injury arising from the employment may not be maintained even though such injury or disability is not compensable. But the meaning of that clause must not be determined from its cold phraseology alone. Consideration must be given to the background and purpose of compensation acts, to the evils sought to be corrected and the objects to be attained; to the rules of the common law with relation to right of action for industrial injuries and diseases, both occupational and otherwise; to the legislative history of our own act; and to all portions of the act which may be of assistance in determining the legislative intent with respect to the said phraseology of section 2516.

That, at common law, employees have right of action against employers for accidental injuries received by employees in the course of their employment through negligence of the employer, cannot be gainsaid. The reports abound in such cases. But the question with which we are more vitally concerned is whether such right exists for damages arising from disease contracted in the course of employment through the negligence of the employer. We find it stated that at common law an employee has no right of action for injury arising from occupational disease. *Adams* v. *Acme White Lead & Color Works,* 182 Mich. 157, 148 N. W. 485, cited in *Industrial Commission* v. *Brown,* 92 Ohio State Repts. 309, 110 N. E. 744. We understand that holding to mean that such right of action does not exist in the employee merely because he has contracted disease as an incident of his employment, in the absence of a showing of negligence on the part of the employer, because such disease may arise in spite of due care of the employer to prevent its being contracted by the employee. In such circumstances, it becomes a risk of the employment which an employee, sui juris, must be presumed to have taken upon himself. But that an employee has right of action at common law for disease arising from his employment through the negligence of the employer seems clear. *Smith* v. *International*

*High Speed Steel Co.*, (N. J.) 120 Atl. 188; *Szalkowski* v. *Osborne Co.*, (N. J.) 154 Atl. 611; *Trout* v. *Wickwire etc., Corp.*, 195 N. Y. Supp. 528; *Jellico Coal Co.* v. *Adkins*, 247 S. W. (Ky.) 972; *Donnelly* v. *Minneapolis Mfg. Co.*, 201 N. W. (Minn.) 305; *Wagner* v. *Jayne Chemical Co.*, 23 Atl. (Pa.) 772; *In re Maggelet*, 116 N. E. (Mass.) 972. A terse and succinct statement of the rule appears in *In re Hurle*, 104 N. E. (Mass.) 336: ''At common law the incurring of a disease or harm to health is such a personal wrong as to warrant a recovery if the other elements of liability for tort are present.''

If plaintiff's decedent had right of action at common law (not taken away from him by the workmen's compensation act) against the defendant, then, under our counterpart of Lord Campbell's Act his administratrix has a right to prosecute this suit. This is in accord with the express provision of the statute. The statute reads: ''Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, * * *.'' Code 1931, 55-7-5.

Is disease contracted by an employee in the course of his employment compensable under our statute? We think so, if the disease be attributable to an exposure or injury at a definite time. *Conley* v. *Compensation Commissioner*, 107 W. Va. 546, 149 S. E. 666, 667. In that case it appeared that the plaintiff's decedent was soldering spouting with a gasoline soldering torch. And that on the first day he used the torch he experienced nervousness and headache and on the second day he was suffering so severely that it was necessary for him to cease work. The evidence disclosed that the employee was poisoned by carbon monoxide gas. In our decision we said: ''Is the relation of the poisoning to the stenosis causative or coincident? If causative, or if the stenosis was materially aggravated thereby, Scranage (plaintiff's decedent) was entitled to compensation.'' That case must not be taken as authority for the proposition that disease, generally speaking, is compensable under the workmen's compensation statute.

That holding was on the basis of specific injury at a fixed time, where the elements of indefiniteness and uncertainty are eliminated. A somewhat kindred situation was presented in *Archibald* v. *Compensation Commissioner,* 77 W. Va. 448, 87 S. E. 791, where a workman met death because of mistakingly drinking poison for water while at work. His dependents were awarded compensation. The Ohio case of *Industrial Commission* v. *Roth,* 98 Ohio St. 34, 120 N. E. 172, makes this proposition clear. The court there held, that although "occupational disease" is not compensable under the statute, the accidental and unforeseen inhaling by an employee, in the course of his employment, of a specific poison or gas, resulting in injury or death, is not an "occupational disease" and is compensable. Such is not the sort of situation involved in the case at bar. Herein the disease is attributable to exposure extending through a long course of employment. So, our special inquiry is this: Is disease which is contracted by an employee through an indefinite period of employment compensable under the workmen's compensation statute? In our opinion diseases so arising are not compensable under our statute.

The unsatisfactory nature of the results attending upon reliance on common law actions for redress of wrongs suffered by employees through the negligence of employers was a large element of the evil to be corrected by the compensation enactments in this state and elsewhere. That old system was unsatisfactory to both employers and employees. The great mass of such actions was based on traumatic injury of one sort or another. Actions based on disease were relatively so few in number as not to give emphasis to the necessity of change in the manner of providing compensation to injured employees and their dependents, so that there is no surprise on examination of the enacting clause of our workmen's compensation act of 1913 to find therein stated as a purpose of the act "to provide a method of compensation for employees that may be injured, or the dependents of those killed in the course of their employment * * *," and that there is no reference in the enacting clause to disease. Acts 1913, chapter 10. Many of the sections of the original compensation act were amended and re-enacted by the legislature of 1915. Acts

1915, chapter 9. The enacting clause there, also, makes special reference to employees who may be injured but makes no reference to employees who may contract disease in the course of their employment. When one is spoken of as having been physically injured, the thought conveyed is that he has been hurt or wounded, that through external force he has suffered traumatism. So that, in our view, when the legislature made provision for workmen injured in the course of and resulting from their employment, injury other than from disease was the matter to which primary consideration was being given.

In the several sections of the workmen's compensation act the words "injury" or "injuries" appear frequently. The commissioner must annually make a sworn report to the governor containing "a general statement of the causes of the accidents leading to the injuries for which the awards were made," Code 1931, 23-1-17; employers not subscribing to the act or in default shall be liable to employees for damages "suffered by reason of accidental personal injuries sustained in the course of employment," and shall not avail themselves of the defense of fellow-servant rules, assumption of risk, or contributory negligence, Code 23-2-8; compensation shall not be paid "on account of any personal injury to or death of any employee caused by a self-inflicted injury," Code 23-4-2; reasonable funeral expenses shall be paid "in case the personal injury causes death within the period of four years from the date of the original injury * * *," Code 23-4-4. These phrases and numerous other similar ones in the act indicate that the legislature was in no wise considering diseases arising from occupation extending over an indefinite period of time. An interesting discussion (admittedly obiter) by Judge Lively of the question as to whether occupational disease is compensable under our compensation act appears in the case of *Davis* v. *Compensation Commissioner*, 110 W. Va. 25, 156 S. E. 844. He mooted the question but reached no conclusion.

Forty-four states of the union have enacted workmen's compensation laws. See Jones' Digest of Workmen's Compensation Laws (11th Ed. 1929), page V.

These enactments and the construction thereof by the courts of the respective states in regard to occupational disease seem to fall into six general classes: (1) occupational disease ex-

pressly excluded entirely, or, except as directly attributable to accident, 33 states; (2) occupational disease arising from employment, compensable, 3 states; (3) specified and enumerated occupational diseases compensable, 5 states; (4) disease not mentioned by the act but held by the courts not to be compensable, 1 state (Mich.) ; (5) disease not mentioned by the act but held by the courts to be compensable, 1 state (Mass.) ; (6) disease not mentioned in the act and the question yet undecided by the court of last resort of the state as to whether disease is compensable or not, 1 state (W. Va.). The Massachusetts court holds that the act of that state does not limit compensation to injuries by accident but that it ''goes beyond those limits and includes such diseases as fairly may be termed personal injuries.'' *In re Maggelet,* (Mass.) 116 N. E. 972. But, as appears from the decision in that case and *Pimental's Case,* (Mass.) 127 N. E. 424, the court does not construe the act as applicable to all diseases which may be attributable to employment. In further discussion of the Michigan act see *Jerner* v. *Imperial Furniture Co.,* (Mich.) 166 N. W. 943.

As already pointed out, our workmen's compensation law, enacted in 1913, was in large measure re-enacted in 1915. In 1919 (Acts 1919, chapter 131) there was another re-enactment of many of the sections of the compensation law. If it had been the legislative intention to include disease, occupational or otherwise, within the terms of the statute it would have been a simple matter so to declare and not to leave the matter subject to inference. A similar deduction and the fact of the narrowness of title of the Michigan act were emphasized by the court of that state. *Adams* v. *Acme White Lead etc. Works,* (Mich.) 148 N. W. 485. As above noted, the titles of the West Virginia act of 1913 and the amendatory act of 1915 make no mention of compensation for disease. Taking into account these several matters, we are of opinion, that disease, whether occupational or otherwise, is not compensable under the West Virginia statute, except in those instances where the disease is attributable to a specific and definite event which may reasonably be classed as a personal injury. This conclusion was presaged by a statement of Judge Poffenbarger, speaking for the court, in *Louis* v. *Smith-McCormick Construction Co.,* 80 W. Va, 159, 92 S. E. 249: ''It

(the compensation act) provides indemnity for accidental injury, when the employer and employee have placed themselves within the provisions thereof creating it, but not otherwise.''

We recur now to the basic query already presented: Does section 6 of article 2 of our compensation law (Code 1931, 23-2-6, Code 1932, sec. 2516) exempt an employer who is protected by the workmen's compensation fund from liability for a wrong to an employee arising from disease contracted in the course of his employment, through the negligence of his employer, though the matter be not compensable under our workmen's compensation statute? It will be remembered that that section of the statute provides that such employer "shall not be liable to respond in damages at common law or by statute for the injury or death of an employee however occurring * * * ."

In many of the states the workmen's compensation statutes exempt employers from liability for damages only in cases in which the employees are entitled to compensation under the acts. In the very able brief of counsel for the defendants in the instant case, it is stated that in forty of the forty-four states having workmen's compensation acts the exemption of employers is thus limited. It is further stated in the said brief that the only states not thus limiting the exemption of employers are North Dakota, Ohio, Washington and West Virginia. It thus appearing that in most of the states, under express provisions of their compensation acts, employers are not exempt from liability for damages in non-compensable cases, employers within this jurisdiction would merely be placed on the same basis as most of the employers elsewhere if we construe our statute as having like meaning and effect. It would therefore seem that such construction would involve no special nor exceptional hardship.

Let us submit this matter to another test. At common law the employer is liable in damages for the employee's traumatic injury and for disease contracted by the employee, where the injury or disease is caused by negligence of the employer, there being no such liability for occupational disease not produced by negligence. By the compensation statute compensation is provided for an employee who suffers a traumatic in-

jury and where he suffers disease attributable to a specific and definite mishap. This burden is borne by industry as a whole and is met by the premiums paid by the employers. (Occupational diseases not being compensable under the statute, no cost of underwriting the same is reflected in the premiums of employers.) In return, the employers are relieved from the burden of common law actions in such matters. The only element of common law liability which remains is predicated on disease occasioned to employees by the negligence of employers. Constrained construction of the statutory exemption of liability would result not only in precluding employees from maintaining damage actions for disease suffered on account of negligence of employers, but immunity of employers from such liability would tend to foster negligence of a kind likely to produce disease. It must not be deemed that such right of action is taken from employees unless the statutory language is clear and concise and not subject to any other reasonable construction. It is difficult to perceive a satisfactory and reasonable basis for exemption of employers from liability for disease caused by their negligence, such disease being non-compensable under the compensation statute.

Because it is an expressed purpose and intent of our act to relieve employers from liability for damages for traumatic injury of employees caused by the negligence of the employers, it by no means follows that it is the policy of the law to relieve employers from liability for the disease of employees caused by negligence of employers. The two matters are entirely separate and distinct. Recognizably, the statutory provision under immediate consideration, namely, that employers under the protection of the workmen's compensation act "shall not be liable to respond in damages at common law or by statute for the injury or death of any employee however occurring," is susceptible of two constructions—the one would measure the words as they stand alone; the other would appraise them in the light of other phraseology of the same section and of other provisions of the act, and of the various complexities of the situation as herein undertaken to be discussed. We do not share the view that this is essentially a legislative matter and that the above quoted words of the statute must be literally construed and the effect given to them which the phrase im-

ports when standing alone. True, the courts must administer the law as it is written, and must not undertake to make law. But where a court is confronted with two constructions—the first destructive of personal rights in that it takes away the means of effectuating such rights and of obtaining redress for their breach, and the other not destructive of either rights or remedies but harmonizing with basic conceptions of personal justice—the latter is preferred. This is interpreting law, not making it. The courts will not recognize that there is an open gap in the law where by reasonable interpretation such undesired condition can be avoided. Therefore, we are of opinion that it was the legislative intent, as expressed in our compensation law (Code 1931, 23-2-6; Code 1932, sec. 2516) to exempt employers from liability for damages at common law or by statute for compensable injury or death of employees, however occurring, but not to exempt from liability for non-compensable disease (caused by negligence of the employer) or death resulting from such disease. This view is bulwarked by phraseology of the said section itself. It relieves an employer from liability for ''injury or death'' of an employee, provided, ''the injured employee'' has remained in the employer's service with notice that the employer was a subscriber to the workmen's compensation fund. Note the language ''injury or death'' and ''injured employee''. As already discussed, the legislature in making provision in the act for injured workmen was giving primary consideration to injury other than disease. The phrases ''injury or death'' and ''injured employee'' as used in the said section must therefore be taken to mean an employee who had been hurt. Trauma! It is from liability to him or his personal representative that the statute affords relief.

It is urged for defendants that our case of *McVey* v. *C. & P. Tel. Co.*, 103 W. Va. 519, 138 S. E. 97, 98, commits us to the proposition as advanced by them that the statute exempts employers from liability for any sort of injury or death that may overtake an employee, regardless of the cause. In the opinion in that case Judge Woods, speaking for the court, said; ''It would seem plain that the legislature intended to relieve the employer from any and all civil responsibilities at common law, growing out of or in any way connected with the injury

or death of an employee in the service of an employer who had fully complied with the requirements of the act. The words used clearly import this.'' That statement must be considered in the light of the facts of that case. The case involved an action of damages by a husband for injuries received by his wife while in the employment of a telephone company. The injury was compensable under the statute and it appeared from the declaration that the defendant was an employer within the meaning of the workmen's compensation law. The declaration did not allege that the defendant had not elected to comply with the provisions of the compensation law, or, having originally complied was in default. We held that the declaration did not state a case against the defendant, because it was protected from such actions by the terms of the compensation act. At the basis of the case was a compensable injury. Statements in the opinion were made on that premise. The court was in no wise considering non-compensable disease attributable to negligence of an employer. The statement of the court stands unimpeachable as to matters to which it was intended to be applicable, but it cannot properly be deemed applicable to matters not then under consideration by the court.

Much reliance is placed by the defendants upon the case of *Zajachuck* v. *Williard Storage Battery Co.*, 106 Ohio St. Repts. 538, 140 N. E. 405, in support of the proposition that a literal interpretation should be given to the exemptive language of the statute under discussion. In so far as the Ohio case may be taken as authority for the position of the defendants, we are not persuaded thereby that we should employ a literal and absolute construction of the words of the statute without regard to the several other elements which we have discussed in this decision.

In the light of all of which we are of opinion to affirm the action of the trial court in overruling the defendant's demurrer to the plaintiff's declaration and each count thereof.

*Affirmed.*

HATCHER, JUDGE (Upon petition to rehear) :

Section 2516 of the workmen's compensation chapter, in effect, tenders a contract to the employer. If accepted by him,

he agrees to pay into the workmen's compensation fund the premiums provided by the chapter, and the state (contracting through the statute) agrees that the employer *"shall not be liable to respond in damages at common law or by the statute for the injury or death of any employee however occurring."* The agreement of the state is so clear and certain that no appraisement in any light can change its natural import. "Other provisions of the act and the various complexities of the situation" cannot becloud its simplicity. "Where the words of a statute are plain, free of ambiguity, conveying a plain intent, there is no room for construction by a court, but only for obedience to the legislative will." *Kelley* v. *Bowman*, 68 W. Va. 49, 69 S. E. 456. The immunity promised the employer in the statute is without any exception. Language could be exhausted without promising an immunity more comprehensive. If the courts refuse the employer absolute immunity under the statute, they refuse him what the state promised, and what he paid for.

Sections 2516 and 2526 are not related in any contractual way. Section 2516 contains the employer's contract, separate from the other provisions of the act and complete in itself. Section 2526 contains directions to the commissioner for the distribution of the compensation fund. Those directions are not addressed to the employer and make no reference whatever to the covenant of the state in section 2516, and that covenant makes no reference to the distribution of the fund.

The situation may be compared to the payment of money into a court by a debtor under order of the court. In such case, the law does not require the debtor to look to the distribution of the fund.

I am aware of no rule of statutory construction whereby the defect of one section is extended to an independent and unrelated subject in another section, and permitted to create ambiguity where none existed before. Lord Tenterden said in *Brandling* v. *Barrington*, (1827) 6 B. & C. 467, 475: "I. think there is always danger in giving effect to what is called the equity of a statute and that it is much safer and better to rely on and abide by the plain words, although the legislature might possibly have provided for other cases had their attention been directed to them." The wisdom of that opinion is

unquestioned. If section 2526 does not include a certain class of occupational injuries which should be compensated, that omission is ascribable solely to the legislature (acting for the state). The omission, if inadvertent, should be corrected by amendment and not by subtraction from the terms of *an executed contract* under section 2516. The terms of a statutory contract should be as inviolate as the terms of an ordinary contract. One should not have to accept at his peril a contract tendered by a sovereign state.

It seems to me that an attempt to harmonize the compensation act "with basic conceptions of personal justice" or to construe the act in relation thereto, is ill-advised because it was not patterned on such conceptions. *Long Flame Co.* v. *Commissioner*, 111 W. Va. 409, 413, 163 S. E. 16. To the contrary the act disregarded all the legal rights of employer and injured employee as theretofore established, and constructed a new and arbitrary relation between them. I approve the following conception of the act as expressed in the petition to rehear:

> "A workmen's compensation law is essentially destructive of personal rights, and broadly so. It tears down the system of common law and statutory liability and on the ruins erects a new system for dealing with industrial injuries. Its destructiveness is not one-sided or limited to the rights of either employers or employees. It takes away from employees and personal representatives of deceased employees previously existing rights of action against a negligent employer, and at the same time denies the negligent employer defenses he had previously enjoyed. And it takes away from the blameless employer the complete immunity from liability for the consequences of negligence of employees, negligence of third parties, accidents occurring without negligence and acts of God, which he had previously enjoyed, perhaps its most 'destructive' provision. Having destroyed all previously existing rights, remedies and defenses in respect of industrial injuries the legislature did not see fit to provide substitutes for *all* such rights, remedies and defenses."

Therefore, I can no longer concur in the opinion herein, and would grant a rehearing.