**STATE of West Virginia ex rel. City of Martinsburg, a Municipal Corporation, Petitioner,**

v.

**Honorable David H. SANDERS, Judge of the Berkeley County Circuit Court; Christopher W. Beard, Mark Stroop, Steven T. Canby, Scott W. Stroop, Daniel M. Thomas, Donna Harmison, Derrick Crawford, Michael A. Johnson, Fred Pearrell, R.A. Talbott, Jr., Anthony Sirna, John Glen Holben, Jonathan Fink, Jason Gochenour and Jason E. Hoover, Respondents.**

No. 32868.

Supreme Court of Appeals of West Virginia.

Submitted: March 29, 2006.

Decided: June 29, 2006.

Dissenting Opinion of Justice Starcher July 11, 2006.

---

**230**

Charles F. Printz, Jr., Joseph L. Caltrider, Bowles Rice McDavid Graff & Love, L.L.P., Martinsburg, for the Petitioner.

Harry Patton Waddell, Martinsburg, for the Respondents.

ALBRIGHT, Justice.

City of Martinsburg (hereinafter referred to as "Martinsburg") invokes this Court's original jurisdiction [1] by seeking a writ of prohibition to bar the Circuit Court of Berkeley County from conducting further proceedings in an action based on a negligence claim seeking award of medical monitoring expenses brought against Martinsburg by current and former firefighters (hereinafter referred to as "Respondents") employed by the city. Martinsburg maintains that the lower court committed clear legal error by denying its motion for judgment on the pleadings, thereby requiring Martinsburg to proceed with litigating the case, despite the statutory immunity afforded it by the provisions of the Governmental Tort Claims and Insurance Reform Act (hereinafter referred to as "Governmental Tort Claims Act"), West Virginia Code Chapter 29 Article 12A. After careful consideration of this matter, we grant the writ as requested for the reasons stated below.

I. Factual and Procedural Background

The action for which Martinsburg sought dismissal below was brought by Respondents as employee firefighters of the city who claimed that significant exposure to diesel exhaust from fire engines and/or emergency vehicles stored at Martinsburg's central fire station increased their risk of cancer, respiratory difficulties, heart disease and hearing loss. The object of Respondents' negligence suit is to obtain medical monitoring damages, although none of Respondents claim present physical injury due to the exposure to the exhaust fumes at their workplace.

On June 10, 2005, Martinsburg filed a motion for judgment on the pleadings, pursuant to Rule 12(c) of the West Virginia Rules of Civil Procedure, asserting governmental immunity. On August 4, 2005, the lower court denied Martinsburg's motion finding that the

---

**1.** *See* W.Va. Constitution Art. VIII § 3; W.Va. Code § 51-1-3 and Ch. 53 Art. 1 (Repl.Vol.2000).

city had failed to meet its burden to establish its right to immunity under West Virginia Code § 29–12A–5(a)(11), a provision of the Governmental Tort Claims Act. Thereafter, Martinsburg petitioned this Court for a writ of prohibition for which we issued a rule to show cause on October 6, 2005.

## II. Standard of Review

■■■■ This Court has used prudence in granting relief through prohibition because "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers...." Syl. Pt. 1, in part, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). In the matter now pending, no question is raised about the lower court acting outside its authority; Martinsburg instead maintains that the court below exceeded its legitimate powers by denying its motion on the pleadings. Where a circuit court is acting within its jurisdiction, this Court has traditionally examined the following five factors to determine whether a writ of prohibition should issue:

(1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.

Syl. Pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). We have further noted that "[t]hese factors are general guidelines that serve as a useful starting point" in our deliberations of a petition for writ of prohibition, and "[a]lthough all five factors need not be satisfied, ... the existence of clear error as a matter of law[ ] should be given substantial weight." *Id.* It is

with these principles in mind that we consider the merits of the petition.

## III. Discussion

The fundamental question raised in this case is whether a claim of simple negligence, without injury, against a political subdivision [2] employer for allegedly failing to maintain a reasonably safe workplace for its employees is actionable in light of the immunity provisions of the Governmental Tort Claims Act. W.Va.Code § 29A–12–5(a)(11) (1986) (Repl.Vol.2004). The immunity provision relied upon by Martinsburg states that "[a] political subdivision is immune from liability if a loss or claim results from: ... (11)[a]ny claim covered by any workers' compensation law or any employer's liability law."

Respondents successfully argued below that Martinsburg failed to satisfy its burden as set forth in *Marlin v. Bill Rich Construction, Inc.*, 198 W.Va. 635, 482 S.E.2d 620 (1996). The lower court's order denying Martinsburg's motion for judgment on the pleadings concluded as follows:

The Court further finds that the defendant has failed to meet the burden set forth in *Marlin v. Bill Rich Construction, Inc.*, 198 W.Va. 635, 482 S.E.2d 620 (1996)[,] to establish to the satisfaction of the Court that each plaintiff has or could bring a claim covered by the West Virginia workers compensation law or some other employer liability law. The Court finds that the plaintiffs' claims for medical monitoring are based upon the increased risk of contracting future diseases and not upon any present injury that would be covered under any workers compensation law or other employer liability law. The Court further finds that ... under the plain language of W.Va.Code § 29–12A–5(a)(11) the statutory immunity only applies to claims covered by workers' compensation law or other employer's liability law. The Court cannot conclude on the record before it, that the plaintiffs have, in fact and presently, contracted any occupational disease by reason of the inhalation of minute par-

---

**2.** "Political subdivision" as defined in West Virginia Code § 29–12A–3(c) (1986) (Repl.Vol.2004) includes municipalities such as Martinsburg.

ticles of diesel exhaust over a period of time or that they have suffered a perceptible aggravation of a previously existing occupational disease. Accordingly, it cannot be said that, as a matter of law, plaintiffs may successfully maintain a workers' compensation claim for "injury" by reason of any occupational disease. The Court further finds that plaintiffs' claims for fear of contracting lung cancer or heart disease also would not meet the statutory requirements necessary to establish a claim compensable under workers compensation. The Court finds that the defendant has failed to meet its burden to establish its right to immunity under *W.Va.Code § 29–12A–5(a)(11)* ... [and] DENIES the defendant's motion for judgment on the pleadings.

■ In *Marlin*, the question before this Court was whether a board of education had governmental immunity under West Virginia Code § 29–12A–5(a)(11) from claims of construction workers not employed by the board but performing services at a school through an independent contract. The workers alleged that they were exposed to asbestos fibers at the worksite, but they claimed no physical injury. The board argued in *Marlin* that the construction workers' claims against it were barred under West Virginia Code § 29–12A–5(a)(11) because the claims were covered by this state's Workers' Compensation law. The issue addressed in *Marlin* was "whether the claims ... [were] 'covered' at all by workers' compensation." 198 W.Va. at 641 n. 3, 482 S.E.2d at 626 n. 3. We concluded in syllabus point three of *Marlin* that:

> If the claims asserted by appellants would result in no benefits under any workers' compensation law or any employer's liability law, that is to say, if there is no recovery of benefits under such laws in lieu of damages recoverable in a civil action, then notwithstanding W.Va.Code § 29–12A–5(a)(11), such claims are not "covered" within the meaning of the immunity statute and may be asserted in the courts of this State against a political subdivision *which is not their employer,* and such recovery had as may be proved under a recognized cause of action.

198 W.Va. at 638, 482 S.E.2d at 623 (emphasis added).

The facts in the case at hand are critically different from those on which *Marlin* was decided. Unlike the political subdivision in *Marlin,* Martinsburg is the employer of the workers. As the above-cited syllabus point makes clear, *Marlin* does not address a cause of action between an employer and employee and thus is inapplicable to the facts presented herein. The lower court's reliance on *Marlin,* therefore, was misplaced.

■ Respondents have alleged a negligence claim against their employer seeking an award for medical monitoring. In order to sustain a claim to support an award of medical monitoring expenses in this state, a plaintiff must prove the following: (1) significant exposure; (2) to a proven hazardous substance; (3) through the tortious conduct of the defendant; (4) which proximately caused an increased risk of plaintiff contracting serious latent disease; (5) with the increased risk making it reasonably necessary for the plaintiff to undergo periodic diagnostic testing; and (6) early detection of a disease is possible through existing monitoring procedures. Syl. Pt. 3, *Bower v. Westinghouse Elec. Corp.,* 206 W.Va. 133, 522 S.E.2d 424 (1999). All six elements must be proven before recovery is available to any plaintiff. *In re Tobacco Litigation,* 215 W.Va. 476, 480, 600 S.E.2d 188, 192 (2004). Of the six areas of proof required according to *Bower,* the "tortious conduct of the defendant" element is central to our decision of the matter now pending. Expounding on the meaning of the tortious conduct element, this Court stated in *Bower:*

> 3. *Tortious Conduct.* Liability for medical monitoring is predicated upon the defendant being legally responsible for exposing the plaintiff to a particular hazardous substance. Legal responsibility is established through application of existing theories of tort liability. 'Recognition that a defendant's conduct has created the need for future medical monitoring does not create a new tort. It is simply a compensable item of damage when liability is established under traditional theories of tort recovery.' ... This is not

to say that a plaintiff may not, as a matter of pleading, assert a separate cause of action based upon medical monitoring; rather, it means that *underlying liability must be established based upon a recognized tort—e.g., negligence, strict liability, trespass, intentional conduct, etc.*

206 W.Va. at 142, 522 S.E.2d at 433 (emphasis added) (internal citations omitted). Hence, it is necessary to examine whether or not Respondents' claim based on the recognized tort of negligence is a legally sufficient independent cause of action within the context of an employer/employee relationship.

Respondents in this case claim no present injury and on that basis contend that their claim falls outside of the provisions of the Workers' Compensation law. In support of this position, Respondents direct us to this Court's decision in *Jones v. Rinehart & Dennis Co.*, 113 W.Va. 414, 168 S.E. 482 (1933), wherein it was held that employers are not exempt from liability when a disease caused by the negligence of an employer is noncompensable under Workers' Compensation. *Id.* at Syl. Pt. 4. We do not believe that the *Jones* decision has bearing on the instant case. At the time *Jones* was decided, the only occupational diseases covered by Workers' Compensation were those specifically enumerated in the statute, West Virginia Code § 23–4–1 (1931). By amendment in 1949, the Legislature expanded Workers' Compensation coverage to any occupational disease proven to be incurred in the course of and resulting from employment. *Powell v. State Workmen's Compensation Comm'r*, 166 W.Va. 327, 273 S.E.2d 832 (1980). Accordingly, the type of potential harm Respondents allege falls within the definition of occupational disease contemplated by the Legislature as within the scope of Workers' Compensation and to which the employer immunity provision of the Workers' Compensation Act may apply.

The employer immunity provision of the Workers' Compensation law appears in West Virginia Code § 23–2–6 (2003) (Repl.Vol. 2005), which states in relevant part:

[a]ny employer subject to this chapter who subscribes and pays into the workers' compensation fund the premiums provided by this chapter or who elects to make direct payments of compensation as provided by this section is *not liable to respond in damages at common law or by statute* for the injury or death of any employee, however occurring, after so subscribing or electing. . . .

The sole exception to the immunity provision in the Workers' Compensation statutes is discussed in West Virginia Code § 23–4–2 (2005) (Repl.Vol.2005), where the intent of the Legislature regarding employer liability is set forth as follows:

(d)(1)It is declared that enactment of this chapter and the establishment of the workers' compensation system in this chapter was and is intended to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as expressly provided in this chapter and to establish a system which compensates even though the injury or death of an employee may be caused by his or her own fault or the fault of a coemployee; that the immunity established in sections six [§ 23–2–6] and six-a [§ 23–2–6a], article two of this chapter is an essential aspect of this workers compensation system; that the intent of the Legislature in providing immunity from common lawsuit was and is to protect those immunized from litigation outside the workers' compensation system except as expressly provided in this chapter; that, in enacting the immunity provisions of this chapter, the Legislature intended to create a legislative standard for loss of that immunity of more narrow application and containing more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct; and that it was and is the legislative intent to promote prompt judicial resolution of the question of whether a suit prosecuted under the asserted authority of this section is or is not prohibited by the immunity granted under this chapter.

(2) The immunity from suit provided under this section and under sections six [§ 23–2–6] and six-a [§ 23–2–6a], article

two of this chapter may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention". . . .

We adhered to these statutory principles in *O'Dell v. Town of Gauley Bridge*, 188 W.Va. 596, 603, 425 S.E.2d 551, 558 (1992), when we explained that "persons covered by workers' compensation forfeit their common law tort remedies against their employers, absent willful injury."[3] In *O'Dell*, the constitutionality of West Virginia Code § 29–12A–5(a)(11) was examined and upheld. In the course of that discussion we stated that "W.Va.Code, 29–12A–5(a)(11), provides immunity to a political subdivision for all damages arising from a tortious injury, not merely for those compensated by workers' compensation." 188 W.Va. at 610, 425 S.E.2d at 565. The plaintiffs in *O'Dell* argued that, by using the phrase "[a]ny claim covered by any workers' compensation law" in West Virginia Code § 29–12A–5(a)(11), the Legislature intended to provide immunity only to the extent that plaintiffs are or could be compensated for their injuries by the Workers' Compensation benefits received. The *O'Dell* plaintiffs interpreted the word "claim" to mean a claim for Workers' Compensation and asserted on this premise that political subdivisions have no immunity from liability for elements of damages not compensated by such benefits. In rejecting such limited meaning of the term "claim," this Court said in *O'Dell* that "it must be remembered that a claim is not based on negligence. It encompasses a variety of statutory monetary benefits . . . some of which are included in the normal tort claim." 188 W.Va. 596, 610, 425 S.E.2d 551, 565. We then concluded that West Virginia Code § 29–12A–5(a)(11) extends immunity to a political subdivision for all damages in tort, not

merely those compensated by Workers' Compensation.

■ In the case before us, Respondents in essence also urge a narrow reading of the term "claim" by arguing that since there is no present injury, a Workers' Compensation claim may not be maintained. We again refuse to assign such a limited meaning to the word "claim" in light of the Legislature's expressed intention regarding employer immunity from suit. The potential injury Respondents fear falls within the ambit of the Workers' Compensation system as an occupational disease arising out of and during the course of employment for which negligence actions against the employer are barred by the immunity provisions of the Workers' Compensation law.[4]

■ The immunity from liability afforded all employers participating in the Workers' Compensation system through West Virginia Code § 23–2–6 protects employers, including a political subdivision such as Martinsburg, against awards of medical monitoring damages based on common law tort theories. Syllabus point three of *Bowers* by its terms indicates that medical monitoring is only a compensable item of damage when liability is established under traditional theories of recovery. Traditional theories of recovery are simply not available in this instance since Workers' Compensation is intended to insulate Martinsburg as a participating employer from incurring liability based upon common law grounds with regard to occupational disease claims. Insofar as Respondents try to raise claims against the employer for negligent conduct, emotional distress or the like, Martinsburg is protected by the statutory remedy available through the Workers' Compensation system.[5] Accordingly, the immuni-

---

3. Subsequent to our decision in *O'Dell*, we found political subdivisions to be immune from liability for "deliberate intent" causes of action expressly allowed to be brought against employers generally under the statutory Workers' Compensation scheme. Syl. Pt. 4, *Michael v. Marion County Bd. of Educ.*, 198 W.Va. 523, 482 S.E.2d 140 (1996).

4. We express no opinion as to whether the medical monitoring sought by Respondents may con-

stitute a medical benefit under the Workers' Compensation Act.

5. It should be noted that the Court has applied this statutory immunity to all employers, not just political subdivisions, as announced in the recently released case of *Bias v. Eastern Associated Coal Corporation*, No. 32778, — W.Va. —, — S.E.2d —, 2005 WL 4076760 (2006), in which the author of this opinion has dissented.

ty provision of the Governmental Tort Claims Act, granting immunity to political subdivisions for "any claim covered by any workers' compensation law or any employer's liability law" demands dismissal of this suit. W.Va. Code § 29–12A–5(a)(11).

Since the lower court's denial of the motion for judgment on the pleadings represents a clear legal error, the writ of prohibition requested by Martinsburg is granted.

## IV.   Conclusion

Finding that Martinsburg is immune from suit, the writ of prohibition barring implementation of the August 4, 2005, order of the Circuit Court of Berkeley County, so as to curtail further proceedings in this matter, is granted.

Writ of prohibition granted.

STARCHER, J., dissenting.

(Filed July 11, 2006)

The common law—which is constitutionally a creature within the domain of the courts—has evolved over the centuries. The common law is not written in stone. It grows to meet the demands of the times. Inscribed inside the Jefferson Memorial in Washington, D.C., we find these words of Thomas Jefferson:

I am not an advocate for frequent changes in laws and constitutions. But laws and institutions must go hand in hand with the progress of the human mind. As that becomes more developed, more enlightened, as new discoveries are made, new truths discovered and manners and opinions change, with the change of circumstances, institutions must advance also to keep pace with the times. We might as well require a man to wear still the coat which fitted him when a boy as civilized society to remain ever under the regimen of their barbarous ancestors.

In the last few decades, science has found that horrific diseases like cancer can be caused by exposure to toxic substances—like asbestos or Agent Orange. But those diseases will often not appear until many years or decades later. Doctors have found that the earlier these diseases are diagnosed and treated, the greater the likelihood of survival. To achieve an early diagnosis, a person who has been exposed to a toxic substance and has an increased likelihood of developing a disease, must routinely go to a doctor for tests—blood work, x-rays, CT scans, general poking and prodding by the doctor, and so on. And for each visit, the doctor sends the person a bill.

In the last few years, courts have begun to recognize that these people—if exposed to the toxic substance as a result of someone else's negligence—have sustained a "loss" or "damages" every time they were required to pay a doctor's bill. These people have an economic "injury:" the cost of the medical tests required to monitor their medical condition. In *Bower v. Westinghouse Elec. Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999), this Court acknowledged the science of the times, and allowed the common law to evolve to allow those people to collect damages from a wrongdoer to pay the costs of their "medical monitoring."

I dissent because this opinion retreats from *Bower* and creates a judicial purgatory for medical monitoring claims, but only those of government employees against their government employer. Government employees are left in a judicially-created netherworld, bereft of any remedy for the wrong committed upon them by their employer. The majority opinion has essentially abandoned its centuries-old role in advancing the common law, crafted a rule which ignores the reality of the modern world, and dumped the issue of compensation for injured government employees squarely in the lap of the Legislature.

The opinion explicitly precludes these employees from receiving payment from the employer for the costs of their medical monitoring. Government employees who are exposed to toxic substances as a result of their employer's carelessness must pay for their medical tests out of their own pocket as a result of the majority's opinion.

The opinion also acknowledges that government employees cannot pursue an action against their employer, even if the employer acted with "deliberate intent" and intended to cause them injury. *See W.Va.Code*, 23–4–2; Syllabus Point 4, *Michael v. Marion*

*County Bd. of Educ.,* 198 W.Va. 523, 482 S.E.2d 140 (1996).

The opinion generously avoids the question, in footnote 4, regarding whether government employees may be entitled to medical benefits under the Workers' Compensation Act. But, in today's political climate, I believe that workers' compensation insurers will steadfastly decline to pay for medical monitoring benefits, preferring instead to gamble with the worker's life and wait to see if the worker develops a disease in the future.

This Court is on a path to abdicate its role as the third branch in our constitutional government, and this case is but one step on that path. The Court has chosen to dump government employees into a no-man's-land with no remedy for their out-of-pocket losses. The baton is therefore passed to the Legislature, in hopes that the elected members of that body will recognize the statutory need for a remedy for the injury sustained by the citizens.

I decline to join my colleagues in the decimation of the constitutional role of the courts as caretakers of the common law. I therefore respectfully dissent.