Diane Kay **BERNTHAL**, Appellant,

v.

**CITY OF ST. PAUL,** County of **Ramsey, State of Minnesota, Respondents.**

No. C1–84–1540.

Supreme Court of Minnesota.

Nov. 8, 1985.

James P. Cullen, Robert J. Sorensen, Minneapolis, for appellant.

Karla F. Bathke, Asst. City Atty., Harold W. Schultz, II, Sp. Asst. Atty. Gen., St. Paul, for respondents.

PETERSON, Justice.

The sole issue in this negligence action against the City of St. Paul involves the constitutionality of Minn.Stat. § 466.03, subd. 2 (1984), which provides immunity from suit in tort for municipalities when the tort victim is covered by the Workers' Compensation Act. Plaintiff, Diane Kay Bernthal's claim against the city is the result of injuries sustained while driving on a St. Paul street, when she drove over a bent, metal signpost which was protruding from the center median. She was hospitalized for the injuries she received when the signpost pierced the bottom of her car and struck her in the abdomen. She has extensive scarring, for which she intends to have corrective plastic surgery.

Plaintiff, privately employed and acting in the scope of her employment at the time of the accident, received workers' compensation benefits for certain medical expenses and for temporary total and permanent partial disabilities. Alleging negligence in the design and maintenance of the street, median, and traffic sign, she seeks in this action to recover for pain and suffering and for the costs of plastic surgery, damages which are not covered or may not be fully covered by the workers' compensation benefits.[1]

---

1. A claims supervisor for Wausau Insurance Companies, insurer for plaintiff's private employer, by affidavit states:

 [W]e will not pay for any recommended plastic surgery on the plaintiff because such a disfigurement, in my opinion, is not compensable under the worker's compensation laws of the State of Minnesota. In addition, we have not and will not pay any past, present or future compensation to the plaintiff for any

The trial court granted the city's motion for summary judgment on the basis of the municipal immunity provision,[2] notwithstanding plaintiff's contention that the provision unconstitutionally discriminates against victims of municipal torts who receive workers' compensation benefits. Plaintiff appealed the judgment to the Minnesota Court of Appeals, 361 N.W.2d 146. The court of appeals requested certification of the matter for accelerated review in this court. We granted the request, and we reverse the judgment of the trial court.[3]

### Standard of Review

In 1963, the Minnesota Legislature abolished sovereign immunity for municipalities for their torts, subject to certain limitations and exceptions. *See* Act of May 22, 1963, ch. 798, § 2, 1963 Minn.Laws 1396, 1397 (codified as amended at Minn.Stat. § 466.02 (1984)). Minn.Stat. § 466.03 lists exceptions wherein municipalities retain immunity. One exception is "[a]ny claim for injury to or death of any person covered by the workers' compensation act."[4] *Id.* at subd. 2.

The first issue to be addressed in considering the validity of section 466.03, subd. 2, is the determination of the appropriate standard of constitutional review. Plaintiff's constitutional challenge is based on the equal protection clauses of the United States and Minnesota Constitutions. The equal protection guarantees contained in U.S.Const. amend. XIV and Minn.Const. art. 1, § 2, require that persons similarly situated be treated alike unless a rational basis exists for discriminating among them. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Glassman v. Miller*, 356 N.W.2d 655 (Minn. 1984). Plaintiff's claim does not involve either a "suspect classification" or a "fundamental right," as those concepts have been identified by the United States Supreme Court. *See City of Cleburne v. Cleburne Living Center*, —— U.S. ——, ——, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985). Thus, her equal protection challenge is subject to review under the rational basis standard.[5]

This court has stated that "[t]he standards of the equal protection clause of the fourteenth amendment are synonymous with the standards of equality under Minn. Const. art. 1, § 2 * * *." *State v. Forge*, 262 N.W.2d 341, 347 n. 23 (Minn.1977). Specifically, we have said that this court's rationality analysis is the same as that developed by the United States Supreme Court. *AFSCME Councils 6, 14, 65 & 96 v. Sundquist*, 338 N.W.2d 560, 570 n. 12 (Minn.1983). Scholarly criticism, however, has raised a question as to whether this court is actually applying a different and stricter rational basis test than the very deferential federal standard. *See McKnight, Minnesota Rational Relation Test: The Lochner Monster in the 10,000 Lakes*, 10 Wm. Mitchell L.Rev. 709 (1984). It has been asserted that in previous cases involving equal protection challenges we have engaged in a more substantive review

anguish, pain or suffering because the same, in my opinion, is not compensable under the worker's compensation laws.

2. Minn.Stat. § 466.01, subd. 1 (1984), defines a municipality as "any city, whether organized under home rule charter or otherwise, any county, town, public authority, public corporation, special district, school district, however organized, county agricultural society organized pursuant to chapter 38, public library, regional public library system, multicounty multitype library system, or other political subdivision."

3. The court of appeals requested certification for accelerated review pursuant to Minn.R.Civ. App. P. 118, subd. 1, and Minn.Stat. § 480A.10, subd. 2(b) (1984). Section 480A.10, subd. 2(b), is the operant provision. Under that provision, accelerated review may be granted upon certification before a decision is reached in the court of appeals. Thus, our review is of the trial court judgment.

4. The state is not entitled to this exception. *See* Minn.Stat. § 3.736, subd. 3 (1984).

5. We have applied the rational basis test in all previous cases in which the municipal tort liability statute, Minn.Stat. ch. 466 (1984), has been challenged on equal protection grounds. *See, e.g., Glassman v. Miller*, 356 N.W.2d 655 (Minn.1984); *Kossak v. Stalling*, 277 N.W.2d 30 (Minn.1979).

of the challenged statute than is proper under the federal standard. While this critique deserves our careful consideration, the present case is not an appropriate one for such consideration because the statute challenged here is defective even under the deferential federal standard.

### Tort Immunity and Workers' Compensation Eligibility

■ The United States Supreme Court has stated that in applying the rational basis standard it seeks "the assurance that the classification at issue bears some fair relationship to a legitimate public purpose." *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). The Court has indicated that determination of whether a challenged classification is rationally related to achievement of a legitimate state purpose involves two basic inquiries: "(1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?" *Western & Southern Life Insurance Co. v. State Board of Equalization*, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981); *AFSCME Councils 6, 14, 65 & 96 v. Sundquist*, 338 N.W.2d at 570.

The first step, then, in scrutinizing the constitutionality of the classification created by section § 466.03, subd. 2, is to identify the purposes of the provision. The provision is an exception to the general abrogation of municipal immunity from suit by Minn.Stat. § 466.02. The exception limits the class of potential plaintiffs by excluding those covered by the Workers' Compensation Act. Because legislative history is lacking, no light is shed on the purpose for this particular exception. We note at the outset, however, that the statute challenged here is not directed at preventing duplicative recovery of damages. As this case illustrates, section 466.03, subd. 2, prevents claims for those damages which are not covered by the Workers' Compensation Act.

In *McCarty v. Village of Nashwauk*, 286 Minn. 240, 175 N.W.2d 144 (1970), we speculated as to one purpose for the exception contained in section 466.03, subd. 2:

> One might speculate that the legislature concluded that permitting suits by one whose injury is covered by the Workmen's Compensation Act would not in the ordinary case substantially benefit the injured party because, arguably, the compensation benefits usually would be substantially equal to any possible recovery against the municipality, and any recovery would inure primarily to the employer's compensation carrier under its statutory right of subrogation.

286 Minn. at 244 n. 5, 175 N.W.2d at 147 n. 5. Thus, the legislature may have had as its purpose to ensure that any public funds expended as a result of tortious injuries attributable to municipalities only benefited the parties actually injured and not their insurers.

The city argues that another purpose for this remaining vestige of sovereign immunity is to protect the financial integrity of uninsured municipalities. As the city notes, a municipality is significantly different from a private party in that a municipality is financed by public funds, and is operated to provide public services rather than for private profits. In other contexts, we have acknowledged the protection of the government entity's financial stability as a legitimate purpose. *See e.g., AFSCME Councils 6, 14, 65 & 96 v. Sundquist*, 338 N.W.2d at 570–71.

■ Assuming the two identified purposes of section 466.03, subd. 2, are legitimate, the question remains whether the classification the statute creates permissibly furthers these purposes. To be constitutional, it must have been reasonable for the legislators to believe that use of the classification would promote the identified purposes. Furthermore, the classification, even if it does further the purpose, cannot withstand rationality analysis if the classification is based upon "criteria wholly unrelated to the objective of" the statute. *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251,

254, 30 L.Ed.2d 225 (1971). The classification "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561–62, 64 L.Ed. 989 (1920). In *Reed*, the United States Supreme Court was confronted with a state statute which gave preference to men over women for appointment as administrator of a decedent's estate. The purpose of the statute was to reduce the workload on probate courts by eliminating one class of contests. *Reed*, 404 U.S. at 76, 92 S.Ct. at 254. Even though the classification furthered the objective of the statute, the Court held that it made "the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause of the Fourteenth Amendment * * *." *Id.*[6]

As in *Reed*, the statute here, while arguably advancing the identified purposes, makes an arbitrary distinction. The classification created by section 466.03, subd. 2, distinguishes victims of municipal tortfeasors who receive workers' compensation benefits from all other victims of municipal tortfeasors. This one class of victims is not permitted to bring suit. Furthermore, because the provision does not prevent victims covered by private insurance from bringing suit, the classification is based solely upon the source of the victim's insurance benefits. Such a distinction bears no rational relation to either of the proffered objectives of the statute.

First, if the legislature wanted to make sure that municipal funds expended as a result of tort judgments inured primarily to the actual victims rather than their insurers, singling out victims who receive workers' compensation benefits produces an illogical result. Workers' compensation benefits are not intended to compensate all damages an injured party might sustain; employees' rights to sue for damages over and above medical and health care benefits

and wage loss benefits are to a certain degree limited by the provisions of the Workers' Compensation Act. Minn.Stat. § 176.001 (1984). Allowing suit, then, as plaintiff's case illustrates, would provide benefits which inure directly to the actual victims. Also, victims of municipal tortfeasors who are covered by private insurance would seem at least as likely to be fully compensated for their injuries by insurance benefits. Yet, they are not denied the right to bring suit.

Second, in terms of protecting the financial stability of municipalities, permitting suit on the basis of the tort victim's source of insurance benefits is no more rational than, for example, permitting suit on the basis of the victim's gender. In either case, the classification serves to reduce the number of suits possible against a municipality on a basis completely unrelated to the purposes of the statute. While the United States Supreme Court made clear in *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), *reh'g denied*, 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981), that under the rational basis test it is not the court's province to pass upon the accuracy of legislative facts, the instant action does not present this problem. The legislative history is essentially devoid of *any* legislative facts. There is nothing to suggest that tort victims covered by workers' compensation insurance are any different from victims covered by any other insurance. Certainly, there is no indication that tort victims covered by workers' compensation seek or recover larger judgments than other victims. Nothing indicates that they bring suit more often. We can conceive of no rational reason to justify the distinction made by section 466.03, subd. 2.

We hold that subdivision 2 of Minn.Stat. § 466.03 violates the equal protection guarantees of the state and federal constitutions and is therefore void.

---

**6.** Although *Reed* involved a gender-based classification, the Court's decision did not rest upon heightened scrutiny. The Court explicitly relied on the "rational relationship" analysis. *See Reed*, 404 U.S. at 76, 92 S.Ct. at 254.

The decision of the trial court is reversed.