425 S.E.2d 551

Donna Sue O'DELL and Jack O'Dell,
Her Husband, Plaintiffs Below,
Appellants,

v.

TOWN OF GAULEY BRIDGE, a West
Virginia Municipal Corporation; and
Gauley Bridge Volunteer Fire Compa-
ny, Inc., a Corporation, Defendants Be-
low, Appellees.

Leon FRANCE and Juanita France; and
Shawn France, Who Sues By His
Guardian and Next Friend, Juanita
France, Plaintiffs Below, Appellants,

v.

The BOARD OF EDUCATION OF the
COUNTY OF BRAXTON, Defendants
and Third–Party Plaintiffs Below, Ap-
pellees,

v.

The VELOTTA COMPANY and Robert
Velotta, Third–Party Defendants
Below, Appellees.

Thomas E. PRITCHARD and Sylvia
Pritchard, Plaintiffs Below,
Petitioners,

v.

The CITY OF LOGAN, a Municipal
Corporation, Defendant Below,
Respondent.

Nos. 20741, 21112 and 21260.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 16, 1992.

Decided Nov. 24, 1992.

Edward G. Atkins, Charleston, and Arthur M. Recht, Martin P. Sheehan and Volk, Frankovitch, Anetakis, Recht, Robertson & Hellerstedt, Wheeling, for appellants.

Gary E. Pullin, Cleek, Pullin & Bibb, Charleston, for appellees Town of Gauley Bridge and Bd. of Educ.

David K. Schwirian, Charleston, for appellee Gauley Bridge Volunteer Fire Co., Inc.

Shawn P. George, George, Ferguson & Lorenson, Charleston, for appellees The Velotta Co. and Robert Velotta.

Allan M. Karlin, Morgantown and Jolyon McCamic, Wheeling, for amicus curiae W.Va. Trials Lawyers Ass'n.

John J. Polak, King, Betts & Allen, Charleston, for amicus curiae Ella Rosaline Shafer and Elmer R. Shafer.

Silas B. Taylor, Sr. Deputy Atty. Gen., Charleston, for amicus curiae Atty. Gen. of West Virginia.

Douglas Witten, Avis, Witten & Wandling, Logan, for petitioners.

John D. Hoffman, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Charleston, for respondent.

MILLER, Justice:

These three cases were consolidated for decision because they present similar issues with regard to provisions of the West Virginia "Governmental Tort Claims and Insurance Reform Act," W.Va.Code, 29–12A–1, *et seq.* Specifically, the plaintiffs below challenge rulings of the lower courts to the effect that W.Va.Code, 29–12A–5(a)(11), confers immunity from suit upon political subdivisions of the State in person-

al injury actions where the claim or loss results from a claim covered by workers' compensation or employer's liability laws.[1]

## I.

The facts in each case are undisputed.

### A.

#### Donna Sue O'Dell

Mrs. O'Dell was employed at a branch of the Fayette County Public Library located in Gauley Bridge, Fayette County. One means of access to the library was a wooden walkway which led from a street on the hillside above and across adjacent property owned by the Gauley Bridge Volunteer Fire Company, Inc., on which the fire station was located. The walkway was owned and maintained by the Town of Gauley Bridge.

On January 20, 1989, Mrs. O'Dell, while on her way to work, slipped and fell on the walkway, sustaining injuries to her left leg and ankle. Because the injuries occurred in the course of and resulting from her employment, Mrs. O'Dell received workers' compensation benefits.

Mrs. O'Dell and her husband brought a personal injury action against the Town and the Fire Company in the Circuit Court of Fayette County alleging that the defendants had failed properly to construct, maintain, and repair the walkway. The defendants subsequently moved for summary judgment on the ground that they were immune from suit under W.Va.Code, 29–12A–5(a)(11). By order dated October 15, 1991, the circuit court granted the summary judgment motion and dismissed, with prejudice, the complaint in the negligence action. Mr. and Mrs. O'Dell appeal from this order.

### B.

#### Leon France

Mr. France is a deaf-mute who was employed as a cement finisher by The Velotta Company, an Ohio corporation under contract with the West Virginia Department of Highways to perform construction work. On September 28, 1989, Mr. France was working on a bridge on a county road in Braxton County. Due to the construction, traffic on the bridge was reduced to a single lane.

At approximately 5:00 p.m. a school bus owned by the Braxton County Board of Education and driven by a Board of Education employee approached the bridge. The bus stopped to allow Mr. France to move out of the traffic lane to a curb on the outside of the bridge. As the bus passed, it struck Mr. France's wheelbarrow, which, in turn, struck Mr. France, pushing him over the bridge railing. Mr. France fell over sixty feet onto rocky ground. As a result of his injuries, he is permanently and totally disabled from employment as a construction worker.

Mr. France was awarded workers' compensation benefits in Ohio. Mr. France, his wife, and his minor son subsequently sued the Board of Education in the Circuit Court of Braxton County, alleging that the bus driver's negligence in the operation of the school bus was the proximate cause of his injuries.[2] The Board subsequently moved for summary judgment on the ground that it was immune from suit under W.Va.Code, 29–12A–5(a)(11). By order dated January 2, 1992, the circuit court granted the motion. The France family now appeals from that ruling.

### C.

#### Thomas E. Pritchard

Mr. Pritchard was employed as a salesman by the Letter Shop, Inc., a private

---

1. W.Va.Code, 29–12A–5(a), provides: "A political subdivision is immune from liability if a loss or claim results from: ... (11) Any claim covered by any workers' compensation law or any employer's liability law[.]"

2. The bus driver had previously been dismissed as a party pursuant to W.Va.Code, 29–12A–5(b), which provides immunity from tort liability to employees of political subdivisions. The dismissal of the bus driver from the action is not contested in this appeal.

business in Logan. On July 12, 1988, he slipped and fell on a handicap access ramp located on a public sidewalk owned and maintained by the City of Logan.

Mr. Pritchard's injuries occurred in the course of and resulting from his employment. He applied for workers' compensation benefits and received a 10 percent permanent partial disability award.

Mr. Pritchard and his wife also instituted a civil action in the Circuit Court of Logan County against the City, alleging that the City was negligent in failing to maintain and repair the sidewalk and in applying paint to the sloped surface of the access ramp, causing it to become slippery when wet. The City moved for summary judgment on the ground that it was immune from suit under W.Va.Code, 29–12A–5(a)(11). By order dated April 27, 1992, the circuit court certified to this Court certain questions relating to the constitutionality and proper construction of the statute.[3]

## II.

The Governmental Tort Claims and Insurance Reform Act (the "Tort Claims Act") grants broad, but not total, immunity from tort liability to political subdivisions

of the State. The stated purposes of the Tort Claims Act are "to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability." W.Va.Code, 29–12A–1. The Tort Claims Act was the result of legislative findings that political subdivisions of the State were unable to obtain affordable tort liability insurance coverage without reducing the quantity and quality of traditional governmental services. W.Va.Code, 29–12A–2.[4] To remedy this situation, the legislature specified seventeen instances in which political subdivisions would have immunity from tort liability. W.Va.Code, 29–12A–5(a).

We are today concerned with only one of those instances. W.Va.Code, 29–12A–5(a)(11), provides: "A political subdivision is immune from liability if a loss or claim results from: ... Any claim covered by any workers' compensation law or any employer's liability law[.]" It is uncontested that each of the defendants is a "political subdivision" within the meaning of the statute. *See* W.Va.Code, 29–12A–3(c). It is also uncontested that Mrs. O'Dell, Mr.

---

**3.** The circuit court certified to us the following questions:

1. "Whether the immunity provisions of *W.Va.Code* § 29–12A–5(a)(11), apply to a workers' compensation claim made by an individual when that individual is making a personal injury claim against the political subdivision."

2. "If question number 1 is answered in the affirmative, whether the immunity provisions of *W.Va.Code* § 29–12A–5(a)(11), bar the recovery by an individual claiming against the political subdivisions of damages not recovered as benefits in a workers' compensation claim which would be otherwise recoverable in a personal injury action."

3. "Whether the immunity provisions of *W.Va.Code* § 29–12A–5(a)(11), providing immunity for any claim covered by any workers' compensation law or employer's liability law, violates the 'certain remedy' provisions of article III, section 17 of the *Constitution of West Virginia.*"

4. "Whether the qualified tort immunity provisions of *W.Va.Code* § 29–12A–5(a)(11), providing immunity for any claim covered by any workers' compensation law or employer's liability law, violates the 'equal protection' provisions of article III, section 10 of the

Constitution of West Virginia and/or the Fourteenth Amendment to the United States Constitution and article III, section 1 of the Constitution of West Virginia."

The circuit court answered Questions 1 and 2 in the affirmative and Questions 3 and 4 in the negative.

**4.** W.Va.Code, 29–12A–2, states:

"The Legislature finds and declares that the political subdivisions of this state are unable to procure adequate liability insurance coverage at a reasonable cost due to: The high cost in defending such claims, the risk of liability beyond the affordable coverage, and the inability of political subdivisions to raise sufficient revenues for the procurement of such coverage without reducing the quantity and quality of traditional governmental services. Therefore, it is necessary to establish certain immunities and limitations with regard to the liability of political subdivisions and their employees, to regulate the insurance industry providing liability insurance to them, and thereby permit such political subdivisions to provide necessary and needed governmental services to its [*sic*] citizens within the limits of their available revenues."

France, and Mr. Pritchard were each entitled to and received workers' compensation benefits as a result of the injuries which are the subject of the civil suits below.

Among them, the plaintiffs raise five challenges to the statute. They contend that W.Va.Code, 29–12A–5(a)(11):

(1) violates the equal protection provisions of Article III, Section 10 of the West Virginia Constitution and of the Fourteenth Amendment to the United States Constitution;

(2) violates the "certain remedy" provisions of Article III, Section 17 of the West Virginia Constitution;

(3) violates the special legislation provisions of Article VI, Section 39 of the West Virginia Constitution;

(4) confers immunity from liability only where the person who is injured is an employee of the defendant political subdivision; and

(5) does not bar recovery of damages not covered by workers' compensation benefits.

### III.

We begin by discussing the three constitutional challenges made against W.Va. Code, 29–12A–5(a)(11). In Syllabus Point 1 of *Robinson v. Charleston Area Medical Center,* 186 W.Va. 720, 414 S.E.2d 877 (1991), we stated our fundamental policy recognizing the plenary powers of the legislature:

" ' "In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. [*W.Va. Const.* art. V, § 1.] Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be

---

**5.** In *Robinson,* we considered a provision of the West Virginia Medical Professional Liability Act which set a $1 million cap on noneconomic damages in medical malpractice cases. *See* W.Va.Code, 55–7B–8. We rejected constitutional challenges to the statute based on equal protection, "certain remedy," and special legislation grounds.

resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt." Syl. pt. 1, *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965).' Syl. pt. 2, *West Virginia Public Employees Retirement System v. Dodd,* 183 W.Va. 544, 396 S.E.2d 725 (1990)." [5]

### A.

### *Equal Protection*

■ Equal protection of the law is guaranteed by Article III, Section 10 of our state constitution, which provides: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." *See* Syllabus Point 4, *Israel v. West Virginia Secondary Sch. Activities Comm'n,* 182 W.Va. 454, 388 S.E.2d 480 (1989). In Syllabus Point 2 of *Israel,* we stated:

"Equal protection of the law is implicated when a [legislative] classification treats similarly situated persons in a disadvantageous manner. The claimed discrimination must be a product of state action as distinguished from a purely private activity."

We have observed that "[t]he scope of our state equal protection concepts 'is coextensive [with] or broader than that of the fourteenth amendment to the United States Constitution.' " [6] *Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 691, 408 S.E.2d 634, 641 (1991), *quoting* Syllabus Point 3, in part, *Robertson v. Goldman,* 179 W.Va. 453, 369 S.E.2d 888 (1988).

---

**6.** The Fourteenth Amendment to the United States Constitution provides, in pertinent part: "No State shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws."

■ We have recognized that "the right to bring a tort action for damages, even though there is court involvement, is economically based and is not a 'fundamental right' for ... state constitutional equal protection purposes." *Robinson v. Charleston Area Medical Ctr.*, 186 W.Va. at 728–29, 414 S.E.2d at 885–86. *Accord Lewis v. Canaan Valley Resorts, Inc., supra; Gibson v. West Virginia Dep't of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991). Thus, for purposes of equal protection analysis, the legislative classifications involved in this case "are subjected to a minimum level of scrutiny, the traditional equal protection concept that the legislative classification will be upheld if it is reasonably related to the achievement of a legitimate state purpose." *Randall v. Fairmont City Police Dep't*, 186 W.Va. 336, 345, 412 S.E.2d 737, 746 (1991). The rule applicable in such cases was stated in Syllabus Point 4 of *Gibson v. West Virginia Department of Highways, supra:*

" ' "Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution which is our equal protection clause." Syllabus Point 7, [as modified,] *Atchinson v. Erwin*, [172] W.Va. [8], 302 S.E.2d 78 (1983).' Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.*, [174 W.Va. 538], 328 S.E.2d 144 (1984)."

In *Randall v. Fairmont City Police Department, supra*, we applied these principles to the Tort Claims Act to determine whether the broad grant of immunity to political subdivisions violated equal protection. The crux of the argument raised in *Randall* was that the Tort Claims Act created a distinction between governmental and nongovernmental tortfeasors which was not reasonably related to a legitimate state interest. We concluded: "[T]he qualified tort immunity provisions of the Act are rationally based and reasonably relate to a proper governmental purpose, specifically ... to stabilize the political subdivisions' ability to obtain affordable liability insurance coverage by defining the risks to be covered." 186 W.Va. at 346, 412 S.E.2d at 747. (Citation omitted). Consequently, in Syllabus Point 5 of *Randall*, we held:

"The qualified tort immunity provisions of the West Virginia Governmental Tort Claims and Insurance Reform Act of 1986, *W.Va.Code*, 29–12A–1 to 29–12A–18, do not violate the equal protection principles of article III, section 10 of the *Constitution of West Virginia*." [7]

■ The plaintiffs in this case raise a different argument. They assert that W.Va.Code, 29–12A–5(a)(11), impermissibly discriminates between two distinct classes of *victims* of governmental tortfeasors: those who are injured in the course of their employment and, so, are entitled to workers' compensation benefits, and those who are injured outside of their employment. The plaintiffs argue that this particular distinction is not rational and bears no reasonable relationship to the legitimate governmental purpose of the Tort Claims Act.

In the lexicon of equal protection law, we have recognized that not every classification by the legislature will be faulted. In *Gibson v. West Virginia Department of Highways*, 185 W.Va. at 220, 406 S.E.2d at 446, we recognized that under the rational basis test, the classification process is peculiarly a legislative function:

"The Supreme Court expressed this point in *Schweiker v. Wilson*, 450 U.S. 221, 234, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186, 198 (1981), *quoting Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520, 525 (1976):

7. In *Pritchard v. Arvon*, 186 W.Va. 445, 413 S.E.2d 100 (1991), we applied the same principles to uphold the constitutionality of W.Va. Code, 29–12A–5(b), which confers tort liability immunity on an employee of a political subdivision.

' "This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classification is neither possible nor necessary." ' (Citation omitted). *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). *See also Village of Belle Terre v. Boraas,* 416 U.S. 1, 8, 94 S.Ct. 1536, 1542, 39 L.Ed.2d 797, 803–04 (1974) ('But every line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial, function.')." [8]

In *Robinson v. Charleston Area Medical Center,* 186 W.Va. at 729–30, 414 S.E.2d at 886–87, we stated:

" '[T]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. It is enough that the State's action be rationally based and free from invidious discrimination.' (internal citation omitted)" *Quoting Dandridge v. Williams,* 397 U.S. 471, 486–87, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491, 503 (1970).

Finally, in *Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. at 692, 408 S.E.2d at 642: "[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines. *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 517 (1976)." In *Lewis,* 185 W.Va. at 691, 408 S.E.2d at 641, we considered a facial challenge to W.Va.Code, 20–3A–1, *et seq.,* which limits liability of ski area operators:

"[A] facial challenge to the constitutionality of legislation is the most difficult challenge to mount successfully. The challenger must establish that no set of circumstances exist under which the legislation would be valid; the fact that the legislation might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. *Rust v. Sullivan,* — U.S. ——, ——, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233, 249 (1991)."

Here, the plaintiffs argue that W.Va. Code, 29–12A–5(a)(11), creates two disparate classes of tort victims. However, the line drawn is not without some logic. We note that all persons covered by workers' compensation forfeit their common law tort remedies against their employers, absent willful injury. W.Va.Code, 23–2–6 (1991).[9] That those who are not covered by workers' compensation retain their right to sue their employers for full damages does not mean that our workers' compensation law violates equal protection.

Moreover, W.Va.Code, 29–12A–5(a)(11), affects a relatively small group of plaintiffs who must satisfy four requirements before their claims are barred by the immunity provisions of the Tort Claims Act. First, the plaintiff must have been injured by the negligence of an employee of a political subdivision. Second, the plaintiff must have received the injury in the course of and resulting from his or her employment. Third, the plaintiff's employer must have workers' compensation coverage. Fourth, the plaintiff must be eligible for such benefits.

W.Va.Code, 29–12A–5(a), was designed to make liability insurance more affordable to political subdivisions by reducing the number of tort cases filed against them. Subsection (11) did so by creating a narrow bar as to suits by those plaintiffs who meet the foregoing four-criterion test. When viewed from the perspective of the other class of plaintiffs who are barred from

---

**8.** In *Gibson,* the issue was whether W.Va.Code, 55–2–6a, which provides a ten-year statute of repose in suits against architects and builders for design or construction defects violated equal protection. We concluded that there was a rational basis for the statute.

**9.** See note 13, *infra,* for the text of W.Va.Code, 23–2–6, as to employer immunity. *See also* W.Va.Code, 23–4–2 (1991) (allowing suit against an employer where the injury is the result of "the deliberate intention of [the] employer to produce such injury[.]")

suing a political subdivision by virtue of receipt of workers' compensation benefits, i.e., the subdivision's own employees, and in view of the clear legislative intent to protect political subdivisions, the disparity is not such that the line drawn violates equal protection.

This was the basis for the Oregon court's holding in *Edwards v. State*, 8 Or.App. 620, 494 P.2d 891 (1972), which considered the constitutionality on equal protection grounds of an Oregon statute that gave every public body immunity from liability for "[a]ny claim for injury to or death of any person covered by the Workmen's Compensation Law." The plaintiff was injured when the logging truck he was driving in the course of his employment collided with a State-owned vehicle. The plaintiff received workers' compensation benefits and then sued the State. Utilizing the rational basis test, the court in *Edwards* stated:

"Plaintiff argues if existence of a collateral source of compensation is the basis for the exception in question, 'why does the exception not provide that any person otherwise insured cannot recover.' The short answer to this is that the legislature need not enact laws which operate to solve perfectly every aspect of the problem to which they are directed. *Leech v. Georgia–Pacific Corp.*, Or., [259 Or. 161], 92 Adv.Sh. 1422, 1427, 485 P.2d 1195 (1971). The legislature may have concluded it was best to confine this exception to a compensation system with which it was familiar—here, one which it had created. Plaintiff further contends the classification is unreasonable because a workman in some instances would be able to recover more in an action against the government than he would under the

Workmen's Compensation Act. That this may be true does not detract from the overall reasonableness of the classification in question.

'* * * [A] classification having some reasonable basis does not offend against the Federal Constitution or the Constitution of this state merely because it is not made with mathematical nicety or because in practice it results in some inequality" * * *.' *Nilsen v. Davidson Industries, Inc. et al.*, 226 Or. 164, 169, 360 P.2d 307, 309 (1961)." 8 Or.App. at 626, 494 P.2d at 894. (Footnote omitted).

*Edwards* was upheld in later cases involving the same statutory provision, including *Jungen v. State*, 94 Or.App. 101, 105–06, 764 P.2d 938, 941 (1988), *review denied*, 307 Or. 658, 772 P.2d 1341, *cert. denied*, 493 U.S. 933, 110 S.Ct. 322, 107 L.Ed.2d 313 (1989), where the court stated: "We conclude, for the reasons we discussed in *Edwards*, that there is a rational basis for retaining governmental immunity as to those persons receiving workers' compensation benefits." *See also Ward v. Romig*, 101 Or.App. 235, 790 P.2d 44 (1990).

We are aware that the Minnesota Supreme Court reached an opposite result in *Bernthal v. City of St. Paul*, 376 N.W.2d 422 (Minn.1985), which dealt with a similar statute as to municipalities. The court noted initially in *Bernthal* that "[b]ecause legislative history is lacking, no light is shed on the purpose for this particular exception." 376 N.W.2d at 425. Using this finding, the court was able to overcome the United States Supreme Court's rule "that under the rational basis test it is not the court's province to pass upon the accuracy of legislative facts." 376 N.W.2d at 426.[10] (Emphasis in original).

---

**10.** The court in *Bernthal* did discuss two possible reasons for the legislation, the most cogent being to protect the financial stability of municipalities:

"[I]n terms of protecting the financial stability of municipalities, permitting suit on the basis of the tort victim's source of insurance benefits is no more rational than, for example, permitting suit on the basis of the victim's gender. In either case, the classification serves to reduce the number of suits possible against a municipality on a basis completely

unrelated to the purposes of the statute.... There is nothing to suggest that tort victims covered by workers' compensation insurance are any different from victims covered by any other insurance. Certainly, there is no indication that tort victims covered by workers' compensation seek or recover larger judgments than other victims. Nothing indicates that they bring suit more often." 376 N.W.2d at 426.

We are unable to agree with this reasoning.

In this case, unlike in *Bernthal*, the legitimate state purpose underlying W.Va.Code, 29–12A–5(a)(11), is clear—to enable political subdivisions of the State to obtain affordable liability insurance. That the legislature has chosen to confer immunity on governmental tortfeasors in suits by certain victims and not in actions by others is not, of itself, evidence that the distinction bears no rational relationship to this state interest.

For these reasons, we find *Bernthal* of little value in resolving the issue before this Court. Here, the legislature attempted to remedy a crisis which was threatening the solvency of political subdivisions and their ability to provide the most fundamental of local government services. While we may not agree that the decision to prevent those victims of governmental tortfeasors who have access to workers' compensation benefits from recovering further damages in a civil suit is the best or fairest approach to take to resolve the problem, we cannot say that it does not bear a reasonable relationship to the purpose of the statute.

As we have earlier noted, we have endeavored to pattern our equal protection principles to be " 'coextensive [with] or broader than that of the fourteenth amendment to the United States Constitution.' " *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. at 691, 408 S.E.2d at 641, *quoting* Syllabus Point 3, in part, *Robertson v. Goldman, supra.* We are not cited nor have we found a United States Supreme Court case that is relevant to this issue.[11] We believe our state analysis would be consistent with the equal protection analysis under the Fourteenth Amendment.

### B.

#### "Certain Remedy"

■ Resolution of the "certain remedy" question is fairly simple once the equal protection question is resolved. This protection is secured by Article III, Section 17 of our state constitution, which provides, in pertinent part: "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law[.]" In Syllabus Point 6 of *Gibson v. West Virginia Department of Highways, supra,* we recognized the circumstances in which this right is implicated:

> "There is a presumption of constitutionality with regard to legislation. However, when a legislative enactment either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication of cases, then the certain remedy provision of Article III, Section 17 of the West Virginia Constitution is implicated."

In Syllabus Point 5 of *Lewis v. Canaan Valley Resorts, Inc., supra,* we stated the principles governing a case in which the "certain remedy" provision is implicated:

> "When legislation either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication, thereby implicating the certain remedy provision of article III, section 17 of the *Constitution of West Virginia,* the legislation will be upheld under that provision if, first, a reasonably effective alternative remedy is provided by the legislation or, second, if no such alternative remedy is provided, the purpose of the alteration or repeal of the existing cause of action or remedy is to eliminate or curtail a clear social or economic problem, and the alteration or repeal of the existing cause of action or remedy is a reasonable method of achieving such purpose."

In *Randall v. Fairmont City Police Department,* 186 W.Va. at 343, 412 S.E.2d at 744, we considered the "certain remedy"

---

11. We note, however, that several lower federal courts have considered the equal protection implications of state tort reform legislation which confers immunity from liability on governmental entities and found no violation. *See Grimes v. Pearl River Valley Water Supply Dist.,* 930 F.2d 441 (5th Cir.1991); *Lacey v. Bekaert Steel Wire Corp.,* 799 F.2d 434 (8th Cir.1986); *Smith v. Commissioners of Dewey Beach,* 685 F.Supp. 433 (D.Del.), *aff'd,* 866 F.2d 1413 (3d Cir.1988); *Meyerhoffer v. East Hanover Township Sch. Dist.,* 280 F.Supp. 81 (M.D.Pa.1968).

provision in the context of the Tort Claims Act:

> "[T]he legislature has found that political subdivisions in this state have been unable to raise sufficient revenues to procure affordable liability insurance coverage without reducing the quantity and quality of traditional governmental services.... We believe this finding states a clear economic problem and that the method selected by the legislature to eliminate or curtail this clear economic problem, specifically, the broad, but not total, reinstatement of local governmental immunity, is a reasonable method of achieving the legislative objective.... While we are sensitive to the interests of those persons injured by political subdivisions, the legislature has responded reasonably to the Court's invitation ... to speak comprehensively on this subject."

In Syllabus Point 2 of *Randall*, we stated:

> "The qualified tort immunity provisions of the West Virginia Governmental Tort Claims and Insurance Reform Act of 1986, *W.Va.Code*, 29–12A–1 to 29–12A–18, do not violate the certain remedy provision of article III, section 17 of the *Constitution of West Virginia.*"

■ Clearly, our discussions in *Gibson*, *Lewis*, and *Randall* of the "certain remedy" provision reflect that in order to successfully invoke its protection, one of several events must be shown. First, it must be shown that the legislation impairs vested rights which, in the context of a cause of action, means that the individual had an existing claim prior to the passage of the legislation.[12] In the alternative, it must be shown that the legislation severely limits existing procedural remedies permitting adjudication of the plaintiff's claim. Even if such an impairment or limitation is shown, however, the measure will not violate the "certain remedy" provision of our constitu-

tion if "the purpose of the alteration or repeal of the existing cause of action or remedy is to eliminate a clear social or economic problem and the repeal or alteration ... is a reasonable method of achieving such purpose." Syllabus Point 5, in part, *Lewis v. Canaan Valley Resorts, Inc., supra.*

■ In *Gibson*, we traced the history of our "certain remedy" provision and considered similar provisions found in other state constitutions. The rule we adopted accorded substantial latitude to legislative enactments. Inherent in our approach is the consideration of the reasonableness of the method chosen to alter or repeal existing rights. In our "certain remedy" analysis as opposed to our examination of equal protection principles, we consider the total impact of the legislation. Where its impact is limited rather than absolute, there is less interference with the "certain remedy" principle, and the legislation will be upheld.

In the present case, the statutory bar is not absolute, but is limited to a narrow class, i.e., those who have received workers' compensation benefits for the injury. We have accepted the legislative reasons for the enactment as valid, and, consequently, we find the "certain remedy" provisions of Article III, Section 17 of our state constitution not to have been violated.

In summary, then, we conclude that W.Va.Code, 29–12A–5(a)(11), giving political subdivisions immunity from tort liability in suits by injured persons whose claims are covered by workers' compensation or employer's liability laws, does not violate the equal protection principles of Article III, Section 10 or the "certain remedy" provision of Article III, Section 17 of the West Virginia Constitution.

---

**12.** In *Gibson v. West Virginia Department of Highways*, 185 W.Va. at 225, 406 S.E.2d at 451, we stated:

> "The term 'vested right,' as used in the certain remedy provision, means that an actual cause of action which was substantially affected existed at the time of the legislative enactment.... [W]here the cause of action has not yet accrued, ... due process principles do

not prevent the creation of new causes of action or the abolition of old ones to attain proper legislative objects." (Citations omitted).

The Tort Claims Act became effective in 1986, over two years before the earliest of the injuries suffered by the plaintiffs below. Consequently, it would appear that the statute does not substantially impair the plaintiffs' vested rights.

## C.

### Special Legislation

The plaintiffs also assert that W.Va. Code, 29–12A–5(a)(11), violates the prohibition against special legislation contained in Article VI, Section 39 of the state constitution. That provision states, in part, that "in no case shall a special act be passed, where a general law would be proper." In Syllabus Point 5 of *Atchinson v. Erwin,* 172 W.Va. 8, 302 S.E.2d 78 (1983), we stated:

"'A statute is general when it operates uniformly on all persons and things of a class and such classification is natural, reasonable and appropriate to the purpose sought to be accomplished.' Syllabus Point 2, *State ex rel. Taxpayers Protective Association of Raleigh County v. Hanks,* 157 W.Va. 350, 201 S.E.2d 304 (1973)."

We recognized in *Atchinson* that "[t]he determination of whether a statute is general is essentially a classification analysis," and we applied an equal protection analysis to resolve such problems. 172 W.Va. at 14, 302 S.E.2d at 83. We stated in Syllabus Point 7 of *Atchinson:*

"Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 39 of Article VI of the West Virginia Constitution."

*See Courtney v. State Dep't of Health,* 182 W.Va. 465, 388 S.E.2d 491 (1989); *State ex rel. Longanacre v. Crabtree,* 177 W.Va. 132, 350 S.E.2d 760 (1986).

In *Gibson v. West Virginia Department of Highways, supra,* we pointed out that our special legislation analysis was basically an equal protection inquiry. We recognized that *Atchinson* and our earlier equal protection cases used Article VI, Section 39 as the source of our state equal protection constitutional principle. However, in *Isra-el v. West Virginia Secondary Schools Activities Commission, supra,* we determined that our state equal protection principle was more appropriately found in Article III, Section 10 of the state constitution. As a result, in *Gibson,* we modified Syllabus Point 7 of *Atchinson* to refer to Article III, Section 10 of the constitution as the source of our equal protection guarantee.

■ What we apparently failed to make clear in *Gibson* is that to the extent that the special legislation prohibition found in Article VI, Section 39 of the West Virginia Constitution mirrors equal protection precepts, it is subsumed in the equal protection principles contained in Article III, Section 10 of our constitution. Consequently, arguments relating to this aspect of the special legislation prohibition will not be separately addressed where we have applied an equal protection analysis to the claim.

Accordingly, because we have already addressed the equal protection aspects of W.Va.Code, 29–12A–5(a)(11), in Part IIIA, and found that the statute does not violate Article III, Section 10, we decline to address the special legislation claim.

## IV.

■ The remaining issues raised by the plaintiffs concern whether, from a statutory construction standpoint, W.Va.Code, 29–12A–5(a)(11), is applicable in the cases below. The statute reads: "A political subdivision is immune from liability if a loss or claim results from: ... (11) Any claim covered by any workers' compensation law or any employer's liability law."

## A.

The plaintiffs read this provision as providing immunity to political subdivisions only with regard to suits brought by their own employees for injuries incurred on the job. In essence, they argue that the immunity conferred by W.Va.Code, 29–12A–5(a)(11), is merely duplicative of the immunity from suit by employees conferred upon covered employers under the Work-

ers' Compensation Act.[13] Because these plaintiffs were not employed by the political subdivisions which they seek to hold responsible for their injuries, the plaintiffs contend that the defendants have no immunity in these proceedings.

The plaintiffs press several reasons for their interpretation of this provision. First, they rely on the established rule of statutory construction stated in *Pristavec v. Westfield Insurance Co.*, 184 W.Va. 331, 337–38, 400 S.E.2d 575, 581–82 (1990):

" 'In the construction of a legislative enactment, the intention of the legislature is to be determined, not from any single part, provision, section, sentence, phrase or word, but rather from a general consideration of the act or statute in its entirety.' Syl. pt. 1, *Parkins v. Londeree*, 146 W.Va. 1051, 124 S.E.2d 471 (1962). *Accord*, syl. pt. 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975)."

The plaintiffs contend that when the immunity provisions of W.Va.Code, 29–12A–5(a)(11), are read in light of the statutory definition of "employee" contained in W.Va.Code, 29–12A–3(a),[14] it is clear that the legislature intended to grant immunity only where the political subdivision was being sued by its own employees whose work-related injuries are covered by workers' compensation.

The problem with this argument is that it requires us to read into W.Va.Code, 29–12A–5(a)(11), a term which does not appear there. Indeed, the only references to the term "employee" in the immunity statute are found in W.Va.Code, 29–12A–5(b) and –5(c), which relate to immunity for employees of political subdivisions who injure third parties. That the omission of this term from the provisions of subsection (a) was not inadvertent is evidenced by the fact that other provisions of the Tort Claims Act make specific reference to suits by employees of the political subdivision. *See* W.Va.Code, 29–12A–18.

The plaintiffs also note that in *Randall v. Fairmont City Police Department, supra,* we had held that other provisions of the Tort Claims Act incorporate common law doctrines of liability. The provision at issue in *Randall* was W.Va.Code, 29–12A–5(a)(5), which provides political subdivisions with immunity for liability for a loss or claim resulting from "the failure to provide, or the method of providing, police, law enforcement or fire protection." We held that the immunity provided by this section was co-extensive with the common law public duty doctrine[15] in reliance on

"the general rule of construction in governmental tort legislation cases favoring liability, not immunity: unless the legislature has clearly provided for immunity under the circumstances, the general

---

**13.** W.Va.Code, 23–2–6, provides, in pertinent part:

"Any employer subject to this chapter who shall subscribe and pay into the workers' compensation fund the premiums provided by this chapter or who shall elect to make direct payments of compensation as herein provided shall not be liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing, and during any period in which such employer shall not be in default in the payment of such premiums or direct payments and shall have complied fully with all other provisions of this chapter."

This provision is substantially the same as the provision in effect at the time the Tort Claims Act became effective. *See* W.Va.Code, 23–2–6 (1974).

**14.** W.Va.Code, 29–12A–3(a), provides:

" 'Employee' means an officer, agent, employee, or servant, whether compensated or

not, whether full-time or not, who is authorized to act and is acting within the scope of his or her employment for a political subdivision. 'Employee' includes any elected or appointed official of a political subdivision. 'Employee' does not include an independent contractor of a political subdivision."

**15.** In *Randall,* 186 W.Va. at 346, 412 S.E.2d at 747, we gave this explanation of the public duty doctrine:

"The public duty doctrine is that a local governmental entity's liability for nondiscretionary (or 'ministerial' or 'operational') functions may not be predicated upon the breach of a general duty owed to the public as a whole; instead, only the breach of a duty owed to the particular person injured is actionable. *Wolfe v. City of Wheeling,* 182 W.Va. 253, 256, 387 S.E.2d 307, 310 (1989)." (Footnote omitted).

common-law goal of compensating injured parties for damages caused by negligent acts must prevail." 186 W.Va. at 347, 412 S.E.2d at 748. (Citations omitted).

In Syllabus Point 8 of *Randall,* we stated:

"*W. Va. Code,* 29–12A–5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for 'the failure to provide, or the method of providing, police, law enforcement or fire protection[,]' is coextensive with the common-law rule not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole. Lacking a clear expression to the contrary, that statute incorporates the common-law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual."

We also observed in *Randall* that several other provisions of the immunity statute incorporated the common law rule that a local government is immune from liability for "discretionary" acts.[16]

The plaintiffs argue that *Randall* serves as precedent for the conclusion that W.Va. Code, 29–12A–5(a)(11), is duplicative only of the immunity conferred on covered employers by the Workers' Compensation Act. We note, however, that the principles of immunity we found incorporated into the Tort Claims Act in *Randall* were well-settled in the common law prior to our abolition of such immunity in *Long v. City of Weirton,* 158 W.Va. 741, 214 S.E.2d 832 (1975). The immunity from liability afforded contributing employers under the Workers' Compensation Act is purely a creature of statute.

More importantly, our decision in *Randall* was premised entirely on the fact that "the legislature has not clearly provid-

ed for immunity regardless of the existence of a special relationship/special duty." 186 W.Va. at 348, 412 S.E.2d at 748. This failure gave rise to an ambiguity which, in view of the general rule favoring liability and not immunity, required us to interpret the statute in favor of the victims of the governmental tortfeasor.

No such ambiguity appears on the face of W.Va.Code, 29–12A–5(a)(11). The statute confers immunity for any loss or claim resulting from "*[a]ny* claim covered by any workers' compensation law or any employer's liability law." (Emphasis added). In Syllabus Points 1 and 2 of *Thomas v. Firestone Tire & Rubber Co.,* 164 W.Va. 763, 266 S.E.2d 905 (1980), we stated:

"1. In the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meanings. Syl. pt. 1, *Tug Valley Recovery Center v. Mingo County Commission,* [164 W.Va. 94], 261 S.E.2d 165 (1979).

"2. The word 'any,' when used in a statute, should be construed to mean any."

Thus, W.Va.Code, 29–12A–5(a)(11), clearly contemplates immunity for political subdivisions from tort liability in actions involving claims covered by workers' compensation even though the plaintiff was not employed by the defendant political subdivision at the time of the injury.

The plaintiffs seek to avoid this result by relying on several cases which interpret a provision of the Oklahoma Tort Claims Act which is identical to W.Va.Code, 29–12A–5(a)(11). In *Jarvis v. City of Stillwater,* 669 P.2d 1108 (Okla.1983), the Oklahoma Supreme Court declared that the immunity conferred by the tort claims act was coextensive with the immunity conferred on employers under that state's workers' compensation act and did not, therefore, apply in suits brought by plaintiffs who worked

16. In note 13 of *Randall,* 186 W.Va. at 346, 412 S.E.2d at 747, we stated:

"At common law a local governmental entity is immune from tort liability for acts or omissions constituting the exercise of a 'discretionary' function, that is, the exercise of a legislative or judicial function or the exercise

of an administrative function involving the determination of fundamental governmental policy. *Restatement (Second) of Torts* § 895C(2)(a)–(b) (1977). The Act incorporates this common-law rule. *See, e.g., W. Va. Code,* 29–12A–5(a)(1)–(2), (4) [1986]."

for other employers at the time of the subject injury. The court concluded that the statute was ambiguous and relied on the general rule favoring liability where there was no explicit grant of immunity. *See also Huff v. State,* 764 P.2d 183 (Okla.1988).

We note, however, that two other jurisdictions have interpreted similar statutory provisions differently. *McCarty v. Village of Nashwauk,* 286 Minn. 240, 175 N.W.2d 144 (1970); *Granato v. City of Portland,* 5 Or.App. 570, 485 P.2d 1115 (1971). We agree with the reasoning of these courts: If the legislature had intended to afford tort liability immunity to political subdivisions only with regard to suits by its own employees, it could easily have done so in the same way the plaintiffs urge us to interpret the statute—by inserting the words "by an employee" in the statute.

Finally, to adopt such a construction would place us in a position where we would be holding that the legislature had, in effect, accorded a duplicate immunity in W.Va.Code, 29–12A–5(a)(11), to that which already existed under W.Va.Code, 23–2–6. This would run counter to our normal rule of statutory construction that the legislature is presumed to be aware of its existing statutes. *Hudok v. Board of Educ.,* 187 W.Va. 93, 415 S.E.2d 897 (1992); *State ex rel. Roach v. Dietrick,* 185 W.Va. 23, 404 S.E.2d 415 (1991).

### B.

 The plaintiffs' final contention is that the use in the statute of the phrase "[a]ny claim covered by any workers' compensation law" indicates that W.Va.Code, 29–12A–5(a)(11), was intended to provide immunity only to the extent that the plaintiff is compensated for his or her injuries by the workers' compensation benefits he or she receives. They interpret the word "claim" to mean a claim for workers' com-

pensation and assert that the political subdivision has no immunity from liability for elements of damages, such as pain and suffering, total lost wages, and mental anguish, not compensated by such benefits.

We cannot agree with such a narrow construction of the word "claim." The respondents contend that such a construction would amount to a splitting of the plaintiffs' causes of action.[17] While there is some analogy to this principle, it must be remembered that a workers' compensation claim is not based on negligence. It encompasses a variety of statutory monetary benefits, *see Cropp v. State Workmen's Compensation Comm'r,* 160 W.Va. 621, 236 S.E.2d 480 (1977), some of which are included in the normal tort claim. We decline to assume that the legislature intended to use the word "claim" in such a limited fashion. Consequently, we conclude that W.Va.Code, 29–12A–5(a)(11), provides immunity to a political subdivision for all damages arising from a tortious injury, not merely for those compensated by workers' compensation.

### V.

For the reasons stated above, we affirm the judgments of the Circuit Courts of Fayette and Braxton Counties and the ruling of the Circuit Court of Logan County on the certified questions presented.

No. 20741—Affirmed.

No. 21112—Affirmed.

No. 21260—Answered and Dismissed.

---

**17.** The "splitting" of a cause of action is essentially a joinder problem. W.Va.R.Civ.P. 18. Prior to the advent of the Rules of Civil Procedure, we had held in Syllabus Point 1, in part, of *Mills v. DeWees,* 141 W.Va. 782, 93 S.E.2d 484 (1956), that "damages resulting from a single tort suffered by one person, consisting partly of property damages and partly personal injury damages, are the subject of only one action against a tort-feasor." *See Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974); Syllabus Point 7, *Harless v. First Nat'l Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982).